SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

CENTRAL FOUNDRY COMPANY et al.,
Defendants.

United States District Court
S. D. New York.

Oct. 25, 1958.

822

Daniel J. McCauley, Jr., Washington, D. C., for plaintiff. J. Gordon Cooney, New York City, of counsel.

Guggenheimer & Untermyer, New York City, for defendant Central Foundry Co., Alfred Berman, Harry Hoffman, Leon H. Tykulsker, Jack Friedman, New York City, of counsel.

Royall, Koegel, Harris & Caskey, New York City, for defendants Central Foundry Co. Independent Stockholders Protective Committee. John A. Wells, Justin W. D'Atri, T. H. McBryde and Stuart A. Jackson, New York City, of counsel.

Maurice Rubinger, New York City, for John J. Nolan, Jr.

BICKS, District Judge.

This contest for control of the Central Foundry Company has been unusually bitter. The contending parties are, on the one side, the present members of the Board of Directors, a majority of whom have served the Company in that capacity for upwards of twenty years and, on the other side, an insurgent group organized and spearheaded by one Sidney Gondelman who also financed its expenses. The members of this group first began acquiring stock in the Company approximately eighteen months ago, and from well nigh the beginning have dedicated themselves to the purpose of taking over the Company.

Correct disposition of the issues presented upon the application now before the Court can be made only with a knowledge of the costly, extended and varied litigation engendered by that attempt.

In pursuance of his objective of having himself and his nominees elected to the Board of Directors, Gondelman instituted the first suit in this series seeking an inspection of the books of the Company. This suit was brought in the New York State Courts on behalf of the Company and all its stockholders for the declared purpose of redressing wrongs inflicted by management on the Company. As a preliminary procedural step in that suit the management succeeded in procuring a court order directing Gondelman's examination. The examination was commenced; whether or not it was ever completed does not appear. However, from Gondelman's own mouth as a witness in the proceeding which will next be discussed, it seems that he urged his attorney to abandon the suit, allegedly because the Company was being subjected to undue expense.

In due time and consistent with the by-laws of the Company, the annual meeting of stockholders for the year 1958 was

called for May 13, 1958 [1] and in accordance with said by-laws and the rules of the New York Stock Exchange, April 14, 1958, was fixed as the record date for the determination of stockholders entitled to vote at said meeting. Some time prior thereto Gondelman filed a schedule 14–B, as required by the Proxy Regulations promulgated by the Securities and Exchange Commission under the Securities Exchange Act of 1934, 15 U.S. C.A. § 78a et seq. Thereafter the activities which have given rise to the litigation in this Court and the unusually heavy demands upon the Securities and Exchange Commission commenced.

In the early part of May 1958 the Company and the Management Proxy Committee of the Company brought suit against Gondelman and the other members of his committee alleging substantial violations of the SEC's proxy rules and praying (i) that all proxies obtained by the Gondelman committee be invalidated; and (ii) that the Committee be enjoined from further violations.

Shortly thereafter the SEC instituted suit against the Gondelman Committee alleging violations of its proxy rules. Both suits were consolidated for the purpose of trial. In the suit by the Commission the parties consented to a proposed decree requiring the Committee to supply all stockholders who had furnished proxies to them with material correcting the misstatements which were the subject of the complaint. After extended hearings this Court, on August 15, 1958 rendered its opinion in the consolidated cause finding in substance that all the material allegations of the Management's complaint had been established, and concluding that "the facts developed upon the hearings before this

Court compel a holding that the proxies secured by the committee are void". The meeting date was postponed to September 26, 1958 and the Committee was directed, *inter alia*, to furnish stockholders with corrective material. Central Foundry Company v. Gondelman, D.C.S. D.N.Y.1958, 166 F.Supp. 429. Reference is made to said opinion for a fuller statement of background material against which the issues presented by this application must be viewed.

In the mid-afternoon of September 25th, less than twenty-four hours before the adjourned meeting of stockholders was scheduled to be held, the Securities and Exchange Commission submitted to the Court a proposed temporary restraining order, providing in part for adjournment of the meeting pending the outcome of a suit it had filed that day laying violations of the proxy rules at the feet of both groups. The action was predicated, in part, upon information counsel for the management group had called to its attention. A hearing was had upon said application which was attended by all counsel as well as some of the interested parties.

The Commission's request for further adjournment of the meeting met with opposition from both groups. The Court indicated that absent a compelling demonstration for the need of further adjournment of the meeting none would be granted because, in its view, it would not be in the interest of the large public stockholder body and because it would result in making still further remote the time between the record date and the date of the meeting.[2] Equally emphatically did the Court express its view to counsel that while it was not inclined to adjourn the meeting neither was it in-

---

1. Pursuant to order of this Court, the meeting was adjourned from time to time pending determination of the matters raised by the litigation hereinafter discussed. The last adjourned date and the one on which the meeting was convened was September 26, 1958.

2. The Court had inquired during the course of the proceedings as to the number of shares which had been transferred of record since the record date and explored with counsel the advisability and desirability of corporate action changing the record date for the annual meeting to one more nearly proximate the actual holding thereof. Counsel seemed to be in agreement that under the laws of the state of incorporation of the company such action was not authorized.

clined to make summary disposition of the suit instituted by the Securities and Exchange Commission.

In an endeavor to avoid this dilemma and to work out a practical solution to the problems raised at the eleventh hour, the Court evolved part of the program reflected in the order herein, dated September 25, 1958. That order provides, *inter alia,* that the meeting be convened and that the right of the SEC to proceed with its suit be preserved.

The Court proceeded to dictate on the record, in the presence of counsel, the recitals contained in the order and the first five paragraphs thereof.[3] At about this juncture counsel for the Commission expressed doubt as to whether voting of the proxies might not frustrate its objective,[4] as well as the announced view of the Court that the suit not be prejudiced. Paragraph 6 of the order was then dictated to protect the Commission against such possible eventuality. Then followed paragraphs numbered 7 and 8.[5] The Gondelman group seeks to predicate a right thereon; the management group asks that all parties be relieved therefrom.

At the threshold it should be noted that paragraph 8 starts out: "the parties having so agreed * * *" This recital is not without significance. All parties were given plainly and unmistakably to understand (i) that the Court entertained serious doubt as to the validity of the provision set out in that paragraph and (ii) that absent agreement, the Court was without authority to impose a covenant not to sue. Unfortunately, a great deal of the discussion was "off the record" so that the transcribed record of the proceedings of September 25th does not completely reflect all that transpired.

During the interval between the date of the order under discussion, September 25th, and October 20th, the critical date fixed in paragraph 7, each side called to the attention of the SEC numerous alleged violations by the other. The SEC appeared before the Court on October 20th and advised that the Commission elected not to proceed with its suit. Counsel stated that he had been authorized by the Commission to disclose to the Court and counsel the reasons for the Commission's conclusion, the same to be deemed, however, "off the record". It will not violate that understanding, to indicate that the Commission's determination did not flow from a finding that both parties had fully complied with the proxy rules since this Court's decree of August 21, 1958. Any attempt, there

---

4. Counsel stated that he had a recollection of a case in another jurisdiction which held moot a suit by the Commission to enjoin exercise of proxies after the event.

5. "7. If the Commission desires to proceed with this action, it shall, not later than October 20, 1958, file a notice of motion for the issuance of a preliminary injunction against the defendants or any of them. If the Commission does not file such a motion within the time stated, then an order shall be entered by the Court upon the motion of any of the defendants upon one day's notice to the other making effective the results of the election and dismissing this action with prejudice but without costs, without prejudice, however, as heretofore provided, to the rights of any of the defendants

to judicially review rulings of the Inspectors of Election.

"8. The parties having so agreed, it is further ordered that neither the company nor the so-called Management Proxy Committee, nor John J. Nolan, Jr., nor the Independent Protective Stockholders Committee of the Central Foundry Company or any of the members thereof will commence any action or proceeding alleging or based upon a violation of the proxy regulations of the Securities and Exchange Commission with respect to the 1958 annual stockholders meeting of the Central Foundry Company; provided, however, that each such defendant shall have the right to fully defend against the complaint of the Commission in the instant proceeding or any other proceeding instituted or prosecuted by the Commission alleging such violations, but not to assert a cross claim in any proceeding instituted or prosecuted by the Commission."

fore, to equate the decision of the Commission with a finding that the proxy solicitation of either party was lawful or unlawful is unjustified. Counsel for the Commission also stated that it took no position as to the interpretation or the validity of paragraph 8 and that "we feel that this problem is really a question essentially between the contending parties."

The charges by management of violations of the proxy rules by the Gondelman group are numerous and some indeed, substantial. On this application the inquiry is not whether management's charges will be established but rather whether sufficient showing has been made to warrant granting of the requested relief. In the light of the Court's prior experience in this case it is satisfied that the truth can only be elicited in an adversary proceeding with fullest opportunity to both sides to examine and cross-examine.

We must be careful to avoid too provincial a view of this case. True, the actual parties to the contest are the two groups vying for control of the Company. At stake, however, are the interests of its approximately 4000 scattered shareholders, the preservation of the integrity of the stockholder electoral system and the maintenance of the proxy rules, consonant with the intent of Congress, as an instrumentality designed to assure dissemination of truth to the end that the stockholders may make informed judgments. If the management can establish its allegations, the Gondelman group has indulged in practices at variance with ordinary standards of decency let alone the high standards imposed by the Securities Act.

It is charged that they played upon every known prejudice ranging from attacks on race and religion to "Wall Street". The reason suggested for not permitting management to pursue this inquiry is that it has not been demonstrated in whose interests the purveyor of this hate was acting. That he, or they, if it be more than one, was not management's representative is obvious,

since the stockholders to whom the appeals were directed had previously indicated a leaning to the management slate and were of ethnic and economic groups most likely to be offended by the scandalous utterances. He, or they, were then either complete strangers to the contest, voluntary interlopers without any interest, or tools of the Gondelman group. Since the former is so unlikely and since if he or they represented the insurgent group every effort would, in all likelihood, have been made to conceal that affiliation the trier of the facts could reasonably infer in the absence of countervailing evidence that these efforts were attributable to Gondelman et al. As was said in Goode v. United States, 8 Cir., 1932, 58 F.2d 105,\conspirators do not ordinarily publicly proclaim their purpose. To refuse to proceed here because of lack of direct evidence well might be to reward the proficient offender. The management group should be afforded an opportunity to utilize the procedures, available to all litigants in this Court, calculated to ascertain the truth.

Counsel for the Gondelman group delivered a letter dated September 25, 1958, to counsel for the SEC and to counsel for management, which stated in part "we respectfully urge that the court not issue the temporary restraining order sought" and further "we respectfully submit that this violation [the alleged unlawful solicitation referred to in the second count of the SEC's complaint] is de minimus and does not require any action by the Court." After stating that the two individuals referred to in said count solicited twenty-three stockholders, the letter continued: "we wish to inform the Court that since then one proxy has been received from one stockholder [of the twenty-three solicited] covering 200 shares. We will deliver this proxy to the Commission and make no attempt to vote it".

Management group urges that contrary to the express, unequivocal commitment to the Court made by counsel in its aforementioned letter, the 200 shares referred to therein which it was agreed

were not to be voted were in fact voted. They urge that the representations were material and that they consented to the September 25th order in reliance thereon. Unchallenged is management's statement that it learned of the voting of said proxies only after they had been counted. Voting of these proxies is sought to be justified on the ground that the representations contained in the letter were conditioned upon denial of the Commission's application for a stay of the meeting. Counsel overlooks the fact that the SEC's application for a postponement of the holding of the meeting was in fact denied and that the condition,[6] if any, to his promise was fulfilled, making the duty to refrain from voting said proxies absolute in any event.

It is urged further that the order of September 25, 1958 did not incorporate the aforementioned undertaking of counsel and, therefore, that he was relieved of the duty to comply therewith. Counsel is a member of the Bar of long standing with considerable litigation experience and in view of the extended hearing it should have occurred to him as a better course to articulate his feeling that he was relieved of his promise and thus afford opposing counsel the opportunity to act with respect thereto as in his opinion the interests of his clients required. Considered in light of the fact that the Commission's second claim for relief deals with the solicitation referred to in counsel's letter, it cannot be said unequivocally that if the feeling that counsel now asserts, namely, that he was relieved of his commitment, had been vocalized at the conference counsel for the Commission or counsel for the management would have concurred. It is urged that this transaction involved but 200 shares and, should therefore, be disregarded as de minimus. The bald statement of this contention is compellingly contradicted by the report of the inspectors of election: of 580,837 votes filed, one side appears to have obtained a majority of *81*; expressed in terms of percentage a majority of *thirteen thousandths of one percent.*

Among the other violations alleged is that the Gondelman group demanded irrevocable proxies (in favor of alleged purchasers immediate or remote) from those who were stockholders on the record date but who had, in the intervening time disposed of their holdings.

Apparently undisputed is that the persons on whose behalf the demands were made purchased securities through the facilities of the New York Stock Exchange on a date subsequent to the "X" voting right date. The letters to the record date stockholders demanding such proxies were in such form, couched in such language and transmitted in such manner that the addressee was placed much in the position of "hereof, fail not at your peril". It is alleged that in some instances the demanders were not the immediate purchasers from the addressee, in other cases the addressee returned an irrevocable proxy for a number of shares in excess of the number claimed to have been purchased by the demander. Still in other instances, it is alleged, demanders claimed that either they or the addressee were the owners of specified certificates of stock which the Company records disclose were not outstanding on the record date.

Upon this application the Court is not called upon to decide whether this eleventh hour program of "demand letters" and its manner of execution was in violation of the proxy rules. The charge is serious enough and supported sufficiently by factual averments to entitle management to its day in court.

Counsel for the Gondelman group argues that paragraph 8 is an effective bar to the relief sought by management, contending that the order of this Court of September 25, 1958, constitutes a private contract between the parties which the Court may not disturb. The difficulty and confusion counsel has fallen into, results in part from inept nomenclature, namely, characterization

---

6. No condition is set out in the letter nor was one expressed at the conference.

of the September 25th order as a contract. It is not a mere contract of the parties; it is a part of the judicial process for the orderly administration of justice and is completely under the control of the court until final judgment is entered. See Webster Motor Car Co. v. Zell Motor Car Co., 4 Cir., 1956, 234 F. 2d 616. Mr. Justice Cardozo, dealing with a consent decree in an anti-trust case, United States v. Swift & Co., 1932, 286 U.S. 106, 52 S.Ct. 460, 462, 76 L.Ed. 999, said:

> "The result is all one whether the decree has been entered after litigation or by consent. [citation omitted]. In either event, a court does not abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong. We reject the argument * * * that a decree entered upon consent is to be treated as a contract and not as a judicial act."

The plenary power of a court over its interlocutory orders is well established, Schoen v. Washington Post, 1957, 100 U.S.App.D.C. 389, 246 F.2d 670; Food, Tobacco, Agricultural and Allied Workers Union of America, Local 186 v. Smiley, 3 Cir., 1947, 164 F.2d 922; 7 Moore, Fed.Practice, Para. 60.20 (2nd Ed. 1955), and especially in a case involving alleged violations of proxy rules where the public interest is paramount the Court will not hesitate to modify its intermediate order where failure to do so would subvert the overriding interests of justice.[7]

█ █  The granting of management's application will unquestionably have the effect of postponing still further ascertainment of the stockholder will. This consideration has not been overlooked, An offender against the Act, however, should not be permitted to retain the avails of his wrongdoing merely because establishment of his misdeeds to the satisfaction of a judicial tribunal may be productive of some delay.[8] There can be no choice between these two alternatives. It is more important that stockholders receive information which is not false or misleading and that the Act be uniformly and vigorously enforced by the courts than that considerations of time be permitted to place a premium on wrongdoing. A contrary view would impose a strain on integrity which a law-abiding citizen should be spared.

█  Counsel for the committee requested that the Court, in the event of an adverse determination, certify the advisability of an immediate interlocutory appeal under the provisions of 28 U.S.C.A. § 1292(b), as amended, Pub.L. No. 85–919, 85th Cong., 2d Sess. (Sept. 2, 1958). After due consideration, the Court is of the view that the order herein does not involve the "controlling question of law as to which there is substantial ground for difference of opinion" contemplated by the statute.

By virtue of the shortness of time— the matter *sub judice* having only been submitted this day—and the Court being of the view that under all the circumstances a speedy disposition is desirable this memorandum necessarily does not deal with every contention made by counsel in their respective affidavits and briefs though not a one, however frivolous, has been overlooked.

The parties are relieved from the operations of pargraphs 7 and 8 of the order made by this Court dated September 25, 1958.

So ordered.

---

7. Compare Wilko v. Swan, 1953, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168; Kaiser-Frazer Corp. v. Otis & Co., 2 Cir., 195 F.2d 838, certiorari denied, 1952, 344 U.S. 856, 73 S.Ct. 89, 97 L.Ed. 664, where agreements between competent parties to waive the benefits of the Securities Act were stricken as against public policy.

8. The Court, of course, makes no finding as to the charges made by management. As indicated supra, such determination can only be made after full hearing and opportunity to both sides to test their respective contentions.