**Raul CORDERO, Plaintiff,**

v.

**PANAMA CANAL COMPANY,**
**Defendant.**

United States District Court
S. D. New York.
Jan. 21, 1959.

Bernard Rolnick, New York City, for plaintiff.

Arthur H. Christy, U. S. Atty., New York City, Benjamin Berman, New York City, of counsel, for defendant.

BICKS, District Judge.

The issue presented on this motion is whether the Federal Employees Compensation Act, 5 U.S.C.A. § 751 et seq.[1] affords the sole and exclusive remedy to plaintiff against his employer the defendant, Panama Canal Company, for injuries sustained in the course of his employment as a member of the crew of the S. S. Ancon, a vessel owned and operated by it. The defendant's argument in the main is that it is an agency or instrumentality of the United States and as such enjoys sovereign immunity except to the extent waived by the F.E.C.A.

The relevant section of the Compensation Act, 5 U.S.C.A. § 757(b), which was added by a 1949 amendment, is set out in the margin.[2] The legislative history of this section indicates that the sentence reading "Provided, However, That this subsection shall not apply to a master or a member of the crew of any vessel" was inserted to secure to seamen the rights they had prior to the enactment of the section and that it was not intended to enlarge or restrict their previously established rights. 95 Cong.Rec. 13609. Johansen v. United States, 1951, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051. We inquire, therefore, into the pre-1949 rights of plaintiff and necessarily also into whether the Panama Canal Company was then subject to suit under the Jones Act and general maritime law, 46 U.S.C.A. § 688.

The Panama Canal Company is the oldest wholly owned United States Government corporation, and the only such entity which was originally organized as a private corporation. Its predecessor, Panama Railroad Company, was chartered by the State of New York on April 7, 1849. It continued under private ownership and control until 1881, when the original French Canal Company acquired ownership of most of the outstanding capital stock. In 1904 the United States purchased these shares; in 1905 it acquired the remaining outstanding shares and became the sole stockholder.[3] Among other ventures, the company set up a shipping line, the Panama Line, which now owns and operates three passenger-cargo ships running between the United States and the Canal Zone.

In 1945, the Government Corporation Control Act, 31 U.S.C.A. §§ 841–871 (1954) was passed. The purpose thereof was "to provide annual scrutiny and current financial control by the Congress of the financial transactions and opera-

---

1. Hereinafter sometimes referred to as F.E.C.A. or the Compensation Act.

2. "The liability of the United States or any of its instrumentalities under sections 751–756, 757–791, and 793 of this title or any extension thereof with respect to the injury or death of an employee shall be exclusive, and in place, of all other liability of the United States or such instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and anyone otherwise entitled to recover damages from the United States or such instrumentality, on account of such injury or death, in any direct judicial proceedings in a civil action or in admiralty, or by proceedings, whether administrative or judicial, under any other workmen's compensation law or under any Federal tort liability statute: Provided, However, *That this subsection shall not apply to a master or a member of the crew of any vessel.*" (Emphasis supplied.)

3. Historical background may be found in the Committee Hearings of the Subcommittee of the Committee on Armed Services, United States Senate on the Incorporation of the Panama Railroad Company, 80th Cong., Second Session, on S. 2002 and S. 2747, May 19, 25, 1948.

tions of the Government corporations * * * It provides the means for effective control by the Congress over the Government corporations through a systematic procedure for consideration and action on their contemplated programs."[4] The act provides that no wholly owned Government corporation created under the laws of any state shall continue as an agency or instrumentality of the United States after June 30, 1948, and that dissolution or liquidation thereof be undertaken prior to such date. Before the terminal date the corporation might be reincorporated by Act of Congress with authority to take over the assets and assume the liabilities of its predecessor corporation. 31 U.S.C.A. § 869(b), (1954). By express provision, the Panama Railroad Company fell within the purview of the Act. 31 U.S.C.A. § 846.

Consonant with the provisions of the statute Congress created a "body corporate" to be known as the Panama Railroad Company, and vested it with authority to take over the assets and assume the liabilities of the New York corporation as of July 1, 1948. To effectuate the foregoing and to accomplish the dissolution of the New York Company, the two entities were authorized to take all steps which the sole stockholder, the United States Government, deemed necessary. 62 Stat. 1075 (1948).[5]

For many years prior to the federal reincorporation of the company it had operated the steamship line and other enterprises, "all of a purely commercial character essential to the operation of the Canal,"[6] and unlike other corporations within the purview of the Government Corporations Control Act, its business was carried on profitably; up to 1948 it had actually paid cash dividends

into the Treasury of the United States totalling $22,494,905.[7] Complete details of the financial and operating results of the New York Company were always presented in a printed annual report. After 1945 the accounts of the Company were audited by the General Accounting Office.[8] These audited annual reports must have communicated the intelligence that claims of seamen, whether settled or reduced to judgment, had, from time to time, been paid.

■ At an early date in the New York Company's history seamen employed aboard its vessels were held to be entitled to the benefits of the Jones Act, notwithstanding that the United States was the sole stockholder thereof. Panama R. Co. v. Minnix, 5 Cir., 1922, 282 F. 47; Gardner v. Panama R. Co., 1951, 342 U.S. 29, 31, 72 S.Ct. 12, 96 L.Ed. 31. See also United States v. Strang, 1920, 254 U.S. 491, 493, 41 S.Ct. 165, 65 L.Ed. 368; Sloan Shipyards Corp. v. United States Shipping Board Emergency Fleet Corp., 1921, 258 U.S. 549, 42 S. Ct. 386, 66 L.Ed. 762. The Government does not question the validity of these holdings and indeed until but very recently recognized their applicability to seamen situated as is plaintiff here. Surely the mere change in status of the United States as sole stockholder of a New York corporation to that of sole stockholder of a federally created body corporate, possessed of the same bundle of assets and subject to the same liabilities, did not alter the rights of seamen employed aboard the S. S. Ancon. The legislative history of the congressional acts pursuant to which the reincorporation was effected does not support the view that Congress intended to work a change which would deprive these seamen of their then well-estab-

4. Senate Report No. 694, Senate Committee on Banking & Currency, Nov. 2, 1945; Government Corporation Control Act. See also 31 U.S.C.A. § 841.

5. The name of the federal corporation was thereafter changed to Panama Canal Company. See 64 Stat. 1038 (1950).

6. Senate Report No. 1401, May 26, 1948 to accompany S. 2747, Panama Railroad Company—Incorporation.

7. Hearing before the Subcommittee, See N. (1).

8. Hearings on Incorporation of Panama Railroad Company p. 10.

lished substantive rights under the Jones Act and General Maritime Law.

In hearings before the Senate subcommittee on the proposed bill providing for reincorporation Bernard F. Burdick, Chief of Office and General Purchasing Officer, the Panama Canal, testified before the Committee in part as follows:

"The powers essential to the successful management of large business enterprises, such as those of the Company, can be most readily conferred through use of the corporation, which also provides the most suitable method for application of the principles of business efficiency developed in the private field."

\*  \*  \*  \*  \*  \*

"A corporation normally possesses the unrestricted right to sue and be sued. It is felt that a business corporation of the Government should be subject, equally with other business enterprise, to liability to suit, and that it should have the right, whether in the position of plaintiff or defendant, to enter into desirable settlements." (Hearings p. 11.)

The Secretary of the Army transmitted to the Committee an explanatory statement made by the President of the Panama Railroad Company in which he said in part:

"A business enterprise needs to possess a large measure of freedom and elasticity in its purchasing as well as its other operations, if the best financial results are to be obtained, \* \* \* In the matter of recruiting and promoting personnel the form offers relatively greater freedom." (Hearings p. 16).

It is abundantly clear that the purpose of the Congress in federally reincorporating the company was not to alter its essential nature or function but merely to comply with the Government Corporations Control Act. The Senate report on the 1948 bill states as much:

"The broad purposes of the bill \* \* \* are to fulfill, through in-corporation of the Panama Railroad Company by act of Congress this requirement of the Government Corporations Control Act, and to provide a charter appropriate and adequate for the efficient and successful performance of the role assigned to the company."

That Congress also intended the new company to be subject to the same duties and obligations as its predecessor also fairly appears. Section 250 of the 1948 reincorporation act provides that the corporation is to be deemed subject to all

"Acts of the Congress, of the United States, now in force, which relate or apply to the New York company; and shall have all the rights, privileges, and exemptions, and be subject to all the obligations, liabilities, and responsibilities applicable to the New York company under or by virtue of such provisions." 62 Stat. 1079.

The Congress could not have been unaware of the decisional law which for many years had permitted suit against the Railroad Company under the Jones Act. Section 250 by subjecting the new company to the same "obligations, liabilities, and responsibilities" which applied to its predecessor negatives any inference that Congress intended to cloak the federally created company with any immunity vis-à-vis merchant seamen in its employ or to deprive the latter of their previously existing rights. To ascribe to Congress an intent to abrogate by indirection the rights of seamen employed by the Panama Canal Company is inconsistent with the manner in which it has generally treated seamen's rights. See 95 Cong. Record 13609.

The defendant has been, and continues to be, operated much as other commercial enterprises which engage in a similar business. The Panama Line, particularly, is difficult to distinguish from its privately owned counterparts. It operates cruise ships and carries cargo; its hiring practices, unlike those of other government agencies employing seamen, conform to those usual in the shipping

industry: albeit not an actual party to the collective bargaining agreement with the National Maritime Union, it employs seamen through the N M U's hiring hall, pays wages at the prevailing union scale, contributes to the latter's welfare and vacation funds and utilizes shipping articles substantially identical to those generally in use in the United States' merchant service. No argument has been advanced which would persuade us that under these circumstances a different rule should be applied to a seaman sent, perhaps fortuitously, by the Union hiring hall to the defendant rather than to a privately owned steamship line.

The defendant relies heavily on Johansen v. United States, supra, and Patterson v. United States, 2 Cir., 1958, 258 F.2d 702, certiorari granted 1958, 358 U. S. 898, 79 S.Ct. 223, 3 L.Ed.2d 148. In the Johansen case the Court was concerned with the availability of the Public Vessels Act, 46 U.S.C. § 781 et seq. (1958) to members of the civil service component of the crew of military transport vessels owned and operated by the United States. The entire thrust of the Court's opinion is directed to the problem of the rights of civilian crew members aboard public vessels. The S. S. Ancon cannot be likened to a troop transport; the rules which accommodate the latter are inapposite here. Nor is the Patterson case, supra [258 F.2d 703], controlling. "The only question before * * *" the Court there was "whether the * * * reasoning [of the Johansen case] applies to suits under the Suits in Admiralty Act [46 U.S.C.A. § 741 et seq.]" In Patterson one of the plaintiffs was employed by (although not "through") the War Shipping Administration. The remaining three plaintiffs were employees of the Inland Waterways Corporation. The Jones Act has never been available to seamen employed by either agency.

■ We are not unmindful that implicit in the denial of defendant's motion is a recognition that members of the crew of passenger-cargo vessels of the Panama Line have the right to invoke the Jones Act against their employer; a right denied to those employed by the agencies involved in Patterson.[9] A contrary holding would effect an unprecedented infringement upon the long recognized rights of the former. The Panama Canal Company is sui generis among governmental agencies; a mechanical application of legal formulae in determining the rights of seamen employed by it is not indicated. Denial to them of their well-established remedies cannot be justified on the ground that uniformity of rights of crew members of vessels operated by all governmental agencies is desirable. The Jones Act was available to the crew of vessels operated by defendant's predecessor (see, cases cited, supra, 170 F.Supp. at page 236); to the extent that recourse to that Act was denied to employees of other governmental entities, differentiation was the pattern. An intent to disturb the status quo is not discernible from the enactments discussed supra, upon which the defendant bottoms its position. That all positions on vessels operated by the defendant are under the rules of the Civil Service Commission excepted from the competitive service [10] would seem to have no relevance to the issue at bar.

Motion to dismiss the complaint denied.

■ By amendment to the Judicial Code, approved September 2, 1958, 28 U.S.C.A. § 1292(b) (1958), Congress provided for appeals from interlocutory orders involving "controlling question[s] of law as to which there is substantial ground for difference of opinion"[11] when the district judge is of the view that an "immediate appeal from the order may

---

9. Only Inland Waterways Corporation operated "merchant vessels". This agency was terminated in 1953.

10. 5 C.F.R. § 06.1, § 6.148.

11. Indeed two of my brethren have taken contrary views. See Scott v. Panama Canal Company, D.C., 170 F.Supp. 737, and Mills v. Panama Canal Company, D.C., Civ. 136–54.

materially advance the ultimate termination of the litigation * * *." The issue presented upon this motion, heretofore untested, is one particularly amenable to the procedures detailed by the new act. Accordingly, this Court certifies the advisability of an immediate appeal.

So ordered.