**SEVEN-UP COMPANY, a Corporation, Plaintiff,**

**v.**

**O-SO GRAPE CO., Bubble Up Corporation, and Bubble Up International, Ltd., Corporations, Defendants.**

**Civ. A. No. P-2217.**

United States District Court
S. D. Illinois, N. D.
Nov. 18, 1959.

See also 177 F.Supp. 91.

Woodson, Pattishall & Garner, Chicago, Ill., for plaintiff.

Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., Eugene R. Johnson, Miller, Westervelt & Johnson, Peoria, Ill., for defendants.

MERCER, Chief Judge.

This cause arises upon a complaint alleging trade-mark infringement and unfair competition. Defendants answered, pleading, inter alia, laches as a defense to plaintiff's claims.

On September 30, 1959, on defendant's motion, this court ordered a separate trial of the laches issue in advance of trial of other issues in the case. Thereafter, on October 20, 1959, on plaintiff's motion, the September 30th order was modified in minor particulars which are not pertinent to disposition of the question now before the court. Subsequently, plaintiff filed a motion to amend the September 30th order, as modified, by inserting therein conditional findings enumerated in 28 U.S.C. § 1292(b) to permit plaintiff to prosecute an immediate appeal therefrom.

Section 1292(b), added to the interlocutory appeals statute by the Act of September 2, 1958, 72 Stat. 1770, provides as follows:

"(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate ap-

peal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order; *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."

That statute was born of Congress' recognition of the fact that an immediate appeal from an otherwise non-appealable order might in certain cases aid the efficient functioning of the judicial process. See, Summary of legislative history, Milbert v. Bison Laboratories, 3 Cir., 260 F.2d 431, 432, et seq. To the extent that its use is restricted to exceptional cases and exceptional circumstances, the statute can serve a beneficent purpose in expediting the ultimate determination of protracted litigation. Without such restriction, rigidly applied, the statute contains the seeds of serious abuse which could go far to abrogate the salutary principle that "piecemeal" appeals will not be permitted. That the prospect of an immediate appeal from pre-trial orders does excite the imagination of legal advocates is attested by the large numbers of reported cases which have sprung up in the scant year of the statute's life.

It seems obvious that Congress feared the statute's tendency to invite abuse because it interposed the concurrent action of two separate courts before an appeal will lie under the statute. First, as a part of its order, the district court must find that the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." After such a finding has been made by the district court, the "Court of Appeals may" upon application made "within ten days after the entry of" such order "in its discretion, permit an appeal to be taken from such order." As interpreted by the courts, the latter condition requires the Court of Appeals to make its own independent determination as to the existence of all statutory conditions before leave to appeal will be granted. In re Heddendorf, 1 Cir., 263 F.2d 887, 889; United States v. Woodbury, 9 Cir., 263 F.2d 784, 786. In Heddendorf, the court stated the principle in the following language:

"[Upon every application for leave to appeal,] the appellate court should at least concur with the district court in the opinion that the proposed appeal presents a difficult central question of law which is not settled by controlling authority, and that a prompt decision by the appellate court at this advanced stage would serve the cause of justice by accelerating 'the ultimate termination of the litigation.'

"In applying these standards, the court must weigh the asserted need for the proposed interlocutory appeal with the policy in the ordinary case of discouraging 'piecemeal appeals'." 263 F.2d 889.

As the above cases correctly imply, whenever leave to appeal under Section 1292(b) is requested the court to which that request is addressed must make an independent evaluation of all the circumstances of the particular case to determine whether an immediate appeal ought to be allowed. It is not perceived how any hard and fast rules for application of the statute can be devised by decision. In the final analysis, the only binding precedent is the statute itself, and the recognition that that statute merely creates an exception to the general rule that only final decisions are appealable in the ordinary case. It would seem that the most which judicial precedent can ever do is to serve as a guide to the court in making that independent evaluation of the circumstances which must be made in every case. In the interest of acknowledging

sources which have influenced the court's reasoning and of fixing a basis for comparison of this court's views with the decisions of other courts, the reported cases in this field are summarized without comment in an appendix to this memorandum.

One cannot read the statute without an impelling conviction that it was intended to apply to the exceptional case, not to run-of-the-mill litigation. Courts which have construed the statute are largely in agreement on that principle. E. g. In re Heddendorf, supra, 263 F. 2d at page 889; United States v. Woodbury, supra, 263 F.2d at page 788; n. 11; Milbert v. Bison Laboratories, supra, 260 F.2d at page 435; Biggers v. Bankers Bond Co., D.C.W.D.Ky., 171 F.Supp. 94, 95; Bobolakis v. Compania Panamena Maritima San Gerassimo, D.C.S.D.N.Y., 168 F.Supp. 236; Krach v. Texas Company, D.C., 167 F.Supp. 947. But the courts seem to part company in their determination of what is an exceptional case. There would seem to be one trend of decisions which would authorize liberal use of the statute for an immediate appeal, especially in cases where a district court has decided a jurisdictional question in favor of its having jurisdiction. E. g., Cordero v. Panama Canal Co., D.C.S.D.N.Y., 170 F.Supp. 234; Pennsylvania Turnpike Comm. v. McGinnis, D.C.E.D.Pa., 169 F.Supp. 580, leave to appeal granted and cause reversed, 3 Cir., 268 F.2d 65.

On the other hand, the more logical view is exemplified by Bobolakis v. Compania Panamena Maritima San Gerassimo, supra. Bobolakis, a citizen and resident of Greece and a seaman on one of the defendant's ships, sued for damages for personal injuries alleged to have resulted from the defendant's negligence and the unseaworthiness of the ship on which Bobolakis was employed. The defendant was a Panamanian corporation and operated its ships under Panamanian registry. The accident from which the cause arose occurred in Canadian waters. Averring the above facts, the defendant moved to dismiss the complaint for lack of jurisdiction. That motion was denied by the court on the ground that jurisdiction was present by reason of the fact that a majority of defendant's stockholders were citizens and residents of the forum. In so deciding, the court refused to follow prior decisions of the same court which had held that jurisdiction could not be predicated upon residence of stockholders alone.

In denying the defendant's motion for leave to file an immediate appeal, the court observed that it was faced with an important case in the sense that a debatable question of law which was applicable to several other pending cases would remain in doubt until the question had been fully and finally decided by the Court of Appeals, but that the importance of the case was not enough to invoke the statutory procedure for immediate appeal. In pertinent part the court said—168 F.Supp. at page 239:

"I believe that the legislative history [of Section 1292(b)] plainly indicates that the statute is to be invoked only in exceptional cases 'to avoid unnecessary delay and expense.' I am fortified in this view as a result of the reading given the statute by the Third Circuit Court of Appeals in the recent case of Milbert v. Bison Laboratories Inc., 3 Cir., 260 F.2d 431. It is clear that this legislation was aimed at the 'big' and expensive case where an unusual amount of time and money may be expended in the pre-trial phases of the case or where the trial itself is likely to be long and costly. * * * There is nothing in the language of the statute or its legislative history to support the view that Congress intended to establish something akin to a 'certiorari' policy for the Courts of Appeals whereby 'important' cases would receive special appellate treatment. Thus, I believe that a party cannot avail himself of the statute unless he shows that the appeal

would save him from the cost and delay of protracted and expensive litigation.

"I have been shown nothing to indicate that this case is at all exceptional, except in that it involves an important legal question."

Likewise, in Milbert v. Bison Laboratories, supra, 260 F.2d at page 433, it is said that the statute "is to be used only in exceptional cases where an immediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." To same effect, Gottesman v. General Motors Corp., 2 Cir., 268 F.2d 194; In re Heddendorf, 1 Cir., 263 F.2d 887.

It would seem that the courts have at times been bothered by an assumed necessity to further define the term "exceptional", and, as a result of reasoning by abstract example to achieve that purpose, have made some unfortunate suggestions which might have far-reaching consequences. The pitfalls of such exemplary reasoning are demonstrated by the suggestion in United States v. Woodbury, 9 Cir., 263 F.2d 784, 787, that an immediate appeal is appropriate whenever a trial court decides a jurisdictional question in favor of its having jurisdiction.[1] That suggestion is an unwarranted one, in my opinion, and one which would, if allowed, do much to abrogate the "final decision" condition for appeals in ordinary cases.

To say that the statute may be properly applied only to the big case or the exceptional case may well leave much to be desired, but because of the nature of the statute precision of definition is difficult except as the statute is defined and applied to each case as it arises. When the statute is so applied, I believe that the interlocutory substantive order which should commend itself to a court for immediate appeal would be a rarity, and that the interlocutory procedural order which would so command itself would be almost as rare as the dodo. As one court has suggested, a loose application of the statute could "only stimulate the parties to more and greater * * * sparring apart from the merits." Gottesman v. General Motors Corp., 2 Cir., 268 F.2d 194, 196.

■ I am convinced beyond peradventure that the order here sought to be appealed does not present one of those exceptional situations in which an interlocutory appeal ought to be allowed. In fact I am of the opinion that none of the statutory conditions are here satisfied.

To support its argument that the order, as modified, does involve a substantially debatable "controlling question of law" which may if now decided on an immediate appeal, "materially advance the ultimate termination of the litigation", plaintiff quotes certain passages out of the context from this court's September 30th memorandum. Such quoted passages contain the court's predicative conclusion that the laches defense, if sustained, would act as a bar to all or most of plaintiff's claims, and the court's observation that judicial opinion as to the effect of laches in trade-mark litigation is not completely reconcilable. It should not be necessary, however, to point out that the issue of laches has not yet been decided. The only decision made is the determination that that issue will

[1]. "Section 1292(b) was intended primarily as a means of expediting litigation by permitting appellate consideration during the early stages of litigation of legal questions which, if decided in favor of the appellant, would end the lawsuit. Examples of such question are those relating to jurisdiction or a statute of limitations which the district court has decided in a manner which keeps the litigation alive but which, if answered differently on appeal, would terminate the case." 263 F.2d at page 787. Compare, In re Heddendorf, 1 Cir., 263 F.2d 887, 888: "Such an exceptional case might be one where the district court has denied a motion to dismiss for want of jurisdiction which raised a novel question and is reluctant to embark upon an extended and costly trial until assured that its decision on the motion to dismiss is sustained."

be tried separately in advance of other issues raised by the pleadings.

The order which plaintiff seeks to appeal is a procedural order entered in the exercise of a sound discretion vested in this Court by Rule 42(b) F.R.Civ.P. 28 U.S.C.A. Whether correct, or, as an abuse of discretion and, therefore, erroneous, that order does not dispose of any issue on the merits of the case. If an immediate appeal were allowed and the order reversed, no central issue of the case would be laid at rest;—the merits of the cause would still remain unresolved for trial at a subsequent date. There is not a "controlling question of law" involved here as that term is used in the statute. That fact alone is enough to support a conclusion that this is not a proper case for invocation of the procedures established by Section 1292(b).

Not only does the order sought to be appealed in this case not involve a controlling question of law, but, also, the question of the correctness of that order is not logically and reasonably debatable and its immediate resolution by appeal would not "materially advance" the ultimate determination of this suit.

■■ I conclude that the question of law which plaintiff seeks to review is neither logically nor reasonably debatable for the reason that the order involved rests upon an exercise of discretion. The existence of discretion in the court to do, or to not do, a particular act necessarily implies that there are at least two sides to the question presented; but the exercise of that discretion by the court either in favor of, or against, doing the act is unassailable except as the vested discretion has been abused. A question of law "as to which there is substantial ground for difference of opinion" as that phrase is used in the statute, must be construed as synonymous with a substantial likelihood that appellant's position would prevail on appeal. Berger v. United States, D.C.S.D.N.Y., 170 F.Supp. 795. The principle that an exercise of absolute discretion by a trial court is reviewable only for abuse is so well-founded in our jurisprudence that citation of authority in its support is no longer necessary. And judicial precedent is legion which suggests that the likelihood of successfully urging an abuse of discretion in an appellate court is comparable to the chance which an ice cube would have of retaining its obese proportions while floating in a pot of boiling water.

Finally, there is no rational basis for a finding that an immediate appeal from the order separating the laches issue for a separate trial could materially advance the ultimate determination of this case. On the contrary, an immediate appeal seems best calculated to materially delay such ultimate determination. A date for the trial of that issue has been set for the early part of December. The parties estimate that evidence on that issue can be fully presented in approximately three trial days. The effect of the trial of that issue cannot be foretold, but it is to be contemplated that it might either terminate this suit or render moot the question now sought to be appealed. In any event, determination of the laches issue would almost surely be an accomplished fact long before an appeal taken now could be prosecuted to a decision.

It may well be true that a separate trial of the laches issue may prove to work a tactical disadvantage to plaintiff. However that may be, the court has exercised its discretion in favor of a separate trial for reasons set forth at some length in its prior memorandum and I do not believe Section 1292(b) was intended to relieve parties to litigation from tactical set-backs arising out of pre-trial orders. United States v. Woodbury, 9 Cir., 263 F.2d 784, 787–788.

The motion to amend the order to permit an immediate appeal will be denied.

It is so ordered.

## Appendix

The decision in two cases in the field have been based upon procedural grounds. In each, leave to appeal was

denied upon the ground that the appellant had failed to comply with the statute and secure the statutory findings in writing in the order sought to be appealed. Milbert v. Bison Laboratories, 3 Cir., 260 F. 2d 431; Gulf States Paper Co. v. Johnson, 6 Cir., 269 F.2d 835. In addition, the application for leave to appeal was not timely filed in Milbert. Milbert is the first judicial interpretation of the statute and the court there first announced the principle that the statute is to be used in exceptional cases, only.

In Gottesman v. General Motors Corporation, 2 Cir., 268 F.2d 194, the court denied leave to appeal from an order denying defendant's motion to dismiss an antitrust complaint claiming treble damages against E. I. Du Pont de Nemours and Company. The cause was a derivative suit by three General Motors shareholders, suing on behalf of the latter corporation. The district court in denying a motion by defendants to dismiss the complaint on the ground that it failed to state a cause of action, authorized an immediate appeal for the reason that its order enabled "a relatively small stockholder interest to plunge two large corporations into inevitably long and expensive litigation which, should this determination be erroneous, would result in a futile waste of time and money by both plaintiffs and defendants." Gottesman v. General Motors Corporation, D.C. S.D.N.Y., 171 F.Supp. 661, 665. The Court of Appeals held that the district court's certificate for an immediate appeal had been "improvidently" granted for the reasons that an immediate appeal would not dispose of the litigation and that a reversal would only lead to a remand of the case for repleading.

In re Heddendorf, 1 Cir., 263 F.2d 887, arose on a petition for leave to appeal from an order of the district court fixing the amount of allowance of various claims for fees made during the course of litigation in a minority stockholders' suit. The court made its independent determination as to whether or not the statutory conditions for appeal as found by the district court were satisfied, and concluded that such conditions did not exist for the reasons that no controlling question of law was presented. In that respect the court observed that "The merits of the case will in any event remain for later decision whether or not the petition for leave to appeal is granted." 263 F.2d at page 889.

In a case in which the United States Government had asserted a claim of privilege and had refused to produce certain documents pursuant to an order entered by the district court, the court then ordered that the government's pleadings be stricken unless it abided by the order to produce. On petition for leave to appeal, it was held that the latter order did not involve a controlling question of law within the meaning of Section 1292(b). United States v. Woodbury, 9 Cir., 263 F.2d 784. The court said in pertinent part, at pages 787–788:

"The issues of this lawsuit and the ability of the court to render a binding decision therein are in no way affected by the order to produce documents. * * * Only if the government chooses to stand on its claim of privilege will its legal position be affected for then its pleadings will be stricken.

"We recognize that the order to produce documents confronts the government with a perplexing dilemma. But litigants have always had to deal with difficult choices of this kind as a result of orders entered prior to or during trials. Nothing in the statute or in its legislative history indicates § 1292(b) was designed to relieve the parties from such hazards.

"In our opinion the claim of privilege here asserted is collateral to the basic issues of this case, and cannot be regarded as presenting a 'controlling question of law' as those words are used in the statute."

The court also voiced the opinion that purely procedural orders might also qualify for appeal under the statute, but only in the most exceptional circumstances.

Where, after verdict for the plaintiff in a personal injury suit, defendants' motion for judgment notwithstanding the verdict was denied, but a new trial was ordered, a motion by one of the defendants for a certificate permitting an immediate appeal was denied. United States v. Canale, D.C.E.D.Pa., 176 F. Supp. 568. Though it recognized that an immediate appeal might advance the final decision of the cause if the appellate court should determine that judgment for the defendant should have been entered notwithstanding the verdict, the court reasoned that the case was "an ordinary negligence action and although it took ten days to try," it was not an "exceptional case to which the Act should be applied." 176 F.Supp. at page 570.

In Biggers v. Bankers Bond Co., D.C. W.D.Ky., 171 F.Supp. 94, the court denied defendant's pre-trial motion to amend its counterclaim, holding that a substantial amount of bonds thereby sought to be pleaded was invalid because the bonds were not issued in accordance with the laws of Kentucky. A notice of appeal was treated by the court as a motion to amend its order to permit an immediate appeal, and, so treated, the motion was denied on the ground that the question involved was collateral to the merits of the case and therefore, not a controlling question of law.

In a suit for a declaratory judgment that the plaintiffs were entitled to the proceeds of a certain policy of National Service Life Insurance, the defendants' motion to dismiss for want of jurisdiction was denied. In rejecting a request for leave to prosecute an immediate appeal, the court held that "there is not enough likelihood of success upon the appeal to warrant the exercise of my discretion in expediting it" in view of the fact of an earlier decision by the Court of Appeals for the Second Circuit in a similar case. Berger v. United States, D.C.S.D.N.Y., 170 F.Supp. 795, 797.

Bobolakis v. Compania Panamena Maritima San Gerassimo, D.C.S.D.N.Y., 168. F.Supp. 236, 239, has been briefly summarized in the main memorandum. Al-

though the court's decision of the jurisdictional question there involved was in conflict with other authorities in the forum, the importance of the question of law involved was held to be not enough to invoke the interlocutory appeal procedure. The court said that the statute was not intended to establish "a 'certiorari' policy * * * whereby 'important' cases would receive special appellate treatment."

In Kroch v. Texas Company, D.C.S.D. N.Y., 167 F.Supp. 947, a treble damage, anti-trust suit, a motion to dismiss the complaint was denied. The court rejected defendant's request for certification of the question for immediate appeal for the reason that there was no controlling question and a reversal would result only in the filing of an amended complaint.

In the course of a long-suffering action between two factions for control of a corporation, the court granted a motion for modification of a prior restraining order so as to permit either party to commence appropriate proceedings based upon alleged violation of S. E. C. proxy regulations. A request that the question be certified for immediate appeal was denied, for the reason that the question involved was in no way controlling upon the merits of the litigation. Securities and Exchange Commission v. Central Foundry Co., D.C.S.D.N.Y., 167 F.Supp. 821.

Leave to appeal was denied also in Deepwater Exploration Co. v. Andrew Weir Ins. Co., D.C.E.D.La., 167 F.Supp. 185. There, upon defendant's motion, the court, applying the doctrine of forum non conveniens, ordered the cause transferred to the United States District Court for the Southern District of Texas. Although the court recognized that an effective appeal of the transfer question would be illusory after trial, the holding was that no controlling question of law was presented since there was no contention that the Texas District Court would have no jurisdiction of the cause. The court indicated that its decision on the immediate appeal question would

have been different if there were a question presented as to the jurisdiction of the court to which the transfer was ordered.

On the other side of the slate, leave to appeal has been granted in a number of cases.

Pennsylvania Turnpike Commission v. McGinnes, D.C.E.D.Pa., 169 F.Supp. 580, leave to appeal granted and decision reversed, 3 Cir., 268 F.2d 65, was a suit brought by the Commission to attach funds in the hands of the District Director of Internal Revenue, which, allegedly, were about to be refunded to a party who had defrauded the Commission of substantial sums of money. A motion to dismiss for want of jurisdiction was denied by an order which contained the requisite statutory recitals permitting an immediate appeal. The inclusion of recitals permitting an immediate appeal was apparently based upon the fact that a jurisdictional question was involved. The reported opinion of the Third Circuit Court of Appeals deals only with the merits of the appeal and merely recites that leave to appeal had been previously granted.

The decision in United States v. View Crest Gardens Apts., Inc., 9 Cir., 265 F.2d 205, was that an order holding that the rights of the United States, as plaintiff in a mortgage foreclosure suit, were to be determined under state law, not federal, presented an exceptional situation, warranting an immediate appeal. From comments on the case in United States v. Woodbury, 9 Cir., supra at page 787 of 263 F.2d, it appeared that the effect of the decision that the case was governed by state law was to deny to the United States a receivership and other protective relief which might have been available had federal law been applied.

In Corabi v. Auto Racing, Inc., 3 Cir., 264 F.2d 784, leave to appeal had been granted, and the court reviewed and affirmed an order denying a motion to dismiss which was predicated on the ground that diversity of citizenship had been simulated and collusively designed to create jurisdiction.

Leave to appeal was granted in Oskoian v. Canuel, 1 Cir., 264 F.2d 591, to review a question of capacity of parties defendant to be sued. The case sounded in tort and was governed by Rhode Island law, with jurisdiction predicated upon diversity of citizenship. Three discharged bakery workers filed suit on behalf of themselves and other members of a defunct independent union against 13 individuals as members and representatives of an international union, alleging that the international union had maliciously interfered with, and had induced the breach of, an employment contract between, the independent union and the A & P Tea Company. The defendants moved to dismiss on the ground that, under the Rhode Island law, neither the International Union nor the asserted class of all of the International's members had the capacity to be sued for a tort by that union by a representative action against the thirteen individuals named. That motion was denied, the trial judge certifying the existence of the requisite conditions for prosecution of an immediate appeal. In granting leave to appeal the court quoted its prior statement in Re Heddendorf, 1 Cir., supra at page 888, of 263 F.2d, to the effect that an exceptional case might be one involving "a novel question" of jurisdiction wherein the trial court "is reluctant to embark upon an extended and costly trial until assured that its decision on the motion to dismiss is sustained." The court then went on to say that "That 'exceptional case' seems to be present here." 264 F.2d at page 594.

In Cordero v. Panama Canal Co., D.C. S.D.N.Y., 170 F.Supp. 234, at page 239, "the advisability of an immediate appeal" was certified by the court, the court holding that the issue decided by its pretrial order which was "heretofore untested, is one particularly amenable to the procedures detailed" in 28 U.S.C. § 1292(b). By its order, in a suit by a seaman for damages for personal injuries against Panama, a corporation which was wholly owned by the United States, the court denied Panama's claim of sov-

ereign immunity from suit, holding that that corporation, to the extent of its engagement in maritime transportation, was amenable to the maritime law to the same extent as any private ship owner.

The Court in Orzulak v. Federal Commerce & Navigation Company, Ltd., D.C. E.D.Pa., 168 F.Supp. 15, allowed an interlocutory appeal from its order transferring the cause to the District Court of the Southern District of New York for trial. The case involved a suit by a seaman against his employer for damages sustained aboard a ship berthed within the Eastern District of Pennsylvania. The occasion of the plaintiff's injury, while the defendant's ship was berthed in Pennsylvania, was the defendant's one and only contact with the forum, and the court could not obtain personal jurisdiction over the defendant. While his suit was pending in the Eastern District of Pennsylvania, plaintiff had filed a second suit on the claim in the United States District Court for the Southern District of New York. The latter court did have personal jurisdiction over the defendant, but the plaintiff's suit there was not timely filed and was subject to dismissal by operation of the statute of limitations. Upon these facts the court entered an order, upon the plaintiff's motion, transferring the cause to the Southern District of New York. In holding that the order was a proper one for an immediate appeal, the court said, in pertinent part, 168 F.Supp. at page 18:

> "Since there are several cases using language which, if applicable to the facts of this case, would result in a denial of the transfer and since plaintiff would be barred by the statute of limitations if the transfer is denied, the trial judge finds that the order granting the transfer involves a controlling question of law" which should be reviewed by an immediate appeal.

For commentary upon the statute, see, Wright, the Interlocutory Appeals Act of 1958, 23 F.R.D. 199.