**UNITED STATES of America, Plaintiff,**

**v.**

**17.0098 ACRES OF LAND (LAWN-CROFT CEMETERY) Situate IN DELAWARE COUNTY, COMMONWEALTH OF PENNSYLVANIA, and Interstate Cemetery Company, and Unknown Owners, Defendants.**

**Civ. A. No. 41540.**

United States District Court
E. D. Pennsylvania.

June 29, 1967.

Drew J. T. O'Keefe, U. S. Atty., Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., Charles F. MacMullan, Department of Justice, Washington, D. C., for plaintiff.

Norman Snyder, Joseph W. deFuria, Albert E. Smith, Melvin G. Levy, Chester, Pa., for defendants.

## OPINION AND ORDER

CLARY, Chief Judge.

This is a pre-trial proceeding in a condemnation action, in which the United States of America (Government), on request of the Commonwealth of Pennsylvania (Commonwealth), is condemnor and Lawncroft Cemetery (Lawncroft), is

condemnee. The Government has been asked to condemn Lawncroft for construction of a portion of the Interstate Highway System, Route 95. Lawncroft does not contest the power of the Government to make this condemnation; however, it does challenge the Government's asserted date of taking. Therefore, because the date of taking is the date on which value is determined and from which interest runs, the Government has petitioned this Court to fix the date of taking before trial is held to find Lawncroft's just compensation. The defendants have stipulated that the Commonwealth, through its contractors, entered the property on July 1, 1966.

## I.

The Federal-Aid Highways Act (23 U. S.C. § 101 et seq.), authorizing the Interstate Highway System, calls for close co-operation between the States and the Government in its construction. "The Act contemplates that implementation of the interstate highway program, including right-of-way acquisition, shall be accomplished by the States to the extent possible." United States v. Certain Parcels of Land, etc., 209 F.Supp. 483 (S.D. Ill.1962). Indeed, the provision for Government condemnation of right-of-ways, 23 U.S.C. § 107(a), requires that before the Government may act, the State must (1) request Government condemnation, (2) be unable to acquire the land or act with sufficient promptness, and (3) agree to pay 10 percent of the costs.[1]

---

1. 23 U.S.C. § 107(a) "In any case in which the Secretary is requested by a State to acquire lands or interests in lands (including within the term 'interests in lands', the control of access thereto from adjoining lands) required by such State for right-of-way or other purposes in connection with the prosecution of any project for the construction, reconstruction, or improvement of any section of the Interstate System, the Secretary is authorized, in the name of the United States and prior to the approval of title by the Attorney General, to acquire, enter upon, and take possession of such lands or interests in lands by purchase, donation, condemnation, or

otherwise in accordance with the laws of the United States (including the Act of February 26, 1931, 46 Stat. 1421), if—

(1) the Secretary has determined either that the State is unable to acquire necessary lands or interests in lands, or is unable to acquire such lands or interests in lands with sufficient promptness; and

(2) the State has agreed with the Secretary to pay, at such time as may be specified by the Secretary an amount equal to 10 per centum of the costs incurred by the Secretary, in acquiring such lands or interests in lands, or such lesser percentage which represents the

[For a discussion that this provision does not limit federal eminent domain power, see United States v. Certain Parcels of Land, etc., supra, adopted by United States v. Pleasure Driveway and Park District of Peoria, Illinois, 314 F.2d 825 (7 Cir. 1963)].

Thus, in May of 1965, the Commonwealth of Pennsylvania, with the approval of the United States Bureau of Public Roads,[2] condemned a portion of Lawncroft for construction of Route 95. Lawncroft challenged the power of the Commonwealth to make the condemnation and filed preliminary objections in the Court of Common Pleas of Delaware County. The preliminary objections were dismissed, and Lawncroft appealed to the Pennsylvania Supreme Court. The basis for the appeal was the Act of April 5, 1849, P.L. 397, § 1, 9 P.S. § 8, which provides:

"It shall not be lawful to open any street, lane, alley or public road through any burial ground or cemetery within this commonwealth, any laws, heretofore passed to the contrary notwithstanding: Provided, That this section shall not extend to the city or county of Philadelphia."

However, on July 1, 1966, while Lawncroft's appeal was pending, the Commonwealth entered Lawncroft and began construction. Lawncroft petitioned the Supreme Court of Pennsylvania for an injunction, and on September 1, 1966, construction was enjoined. On September 27, 1966, Mr. Justice Eagen, writing for a majority of the Pennsylvania Supreme Court, held that the Commonwealth did not have the power to condemn Lawncroft. See: Interstate Cemetery Company Appeal, 422 Pa. 594, 222 A.2d 906 (1966). Thereafter, on November 15, 1966, the Government, in response to a written request from the Pennsylvania Department of Highways dated September 27, 1966, filed the instant suit against Lawncroft, and later that same day, Judge Harold K. Wood signed an Order for Delivery of Possession. The Government, however, does not claim November 15, 1966 as the date of taking; instead, it claims July 1, 1966, the date of the Commonwealth's illegal entry. The importance of the Government's claim becomes apparent with the additional fact that Lawncroft is now prosecuting in the State Courts a damage action against the Commonwealth for the illegal entry.

■ "Ordinarily, when a condemnation suit is commenced by the Government, it files a declaration of taking as provided in 40 U.S.C. § 258a, but if the Government, prior to the commencement of the suit and the filing of a declaration of taking, has entered upon the property or has utilized it for its purposes, there is a taking and just compensation becomes due on that date." United States v. 1,060.92 Acres of Land, etc., 215 F.Supp. 811 (W.D.Ark.1963). In the instant case, although the Government has chosen to proceed under different statutory authority,[3] the rule of prior entry remains the same. United States v. Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958). Thus, for the Government to succeed with its contended date of taking, it need only show that it entered or used Lawncroft on July 1, 1966. Since, factually, the Government *actually* did not enter or use Lawncroft on that date, it must show that it entered with the Commonwealth.

The Government, therefore, argues three propositions. First, it urges "that from and after the time the Bureau of Public Roads approved the acquisition and construction of the instant segment of the interstate highway, it became a

State's pro rata share of project costs as determined in accordance with subsection (c) of section 120 of this title. The authority granted by this section shall also apply to lands and interests in lands received as grants of land from the United States and owned or held by railroads or other corporations."

2. 23 U.S.C. § 105(a).

3. The Government is proceeding under 40 U.S.C. § 257 and 23 U.S.C. § 107.

federal project for all intents and purposes, and any entry into possession of the property for the purpose of the project was under lawful mandate of the United States, notwithstanding the absence of a formal proceeding in a federal court at that time." (Government's Brief, Docket Paper #12.) Secondly, it argues that the United States Bureau of Public Roads ratified the initial State entry, and it offers an interdepartmental memo as proof. Finally, it reads 23 U. S.C. § 107 as permitting the Government, whenever necessary, to intervene in a condemnation action and effect its own taking. Thus, it declares that under this supreme authority, the Government "adopts" July 1, 1966 as its date of taking.

These arguments, however, are not tenable. The Federal-Aid Highways Act (Act) does not contemplate or expect the relationships between the Government and the States which the Government urges this Court to find. Under the Act, the States retain all attributes of their sovereignty. Eden Memorial Park Association v. United States, 300 F.2d 432, 439 (9 Cir. 1962) held as follows:

"Moreover, analysis of the Federal-Aid Highways Act indicates that while close co-operation between the United States and the individual states was contemplated, the states or their agencies or officials were in no sense to become agents of the United States in projects authorized by that act. The whole tenor of the act is that the United States stands ready to assist the states when, under stated conditions, the states seek such assistance. Section 107 agreements are intended to confirm this arrangement, but not to create a principal and agent relationship in either direction."

Thus, it is clear that the Act contemplates co-operation between independent entities, not the subordination or agency of the States, argued by the Government, and does not create, in the Government or the States, the capacity which would permit the formation of the argued-for agency relationships.

██ Specifically, 23 U.S.C. § 107(a) (§ 107) is very exact in indicating the independent functions of the States and Government in right-of-way condemnation. Condemnation is left exclusively with the States, unless Government aid is (1) requested, (2) necessary, and (3) financially supported. In the instant case, the Government, acting in response to a concurrence of these three requirements, condemned Lawncroft on November 15, 1966. This was its first act against Lawncroft and must be held as the date of taking. Undoubtedly, the Government, under its general eminent domain power, could have acted earlier, but it did not so act, thus denying all possibility of an earlier taking. The Government chose to proceed under § 107, and by that choice, obligated itself to follow the limitations in § 107, and to accept the relationship of independent co-operation between the States and Government established by the Act.

## II.

In addition, the Government has asked the Court, in the event there is a finding against it, to enter an Order under 28 U.S.C. § 1292(b) permitting an interlocutory appeal. The argument is that the instant question "is of great importance to the final disposition of this and other litigation now pending in the state courts arising from the same cause of action." (Government's Brief, Docket Paper #12.) This Court must, however, deny the Government's petition.

Section 1292(b), added to the interlocutory appeals statute by the Act of September 2, 1958, 72 Stat. 1770, reads as follows:

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an im-

mediate appeal from the order may *materially advance the ultimate termination of the litigation,* he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." (Emphasis added.)

"It is quite apparent from the legislative history of the Act of September 2, 1958 that Congress intended that Section 1292(b) should be sparingly applied. It is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." Milbert v. Bison Laboratories, 260 F.2d 431 (3 Cir.1958). See also the excellent discussion and collection of cases in Seven-Up Company v. O-SO Grape Co., 179 F.Supp. 167 (S.D.Ill.1959).

■ Clearly, the instant case cannot be characterized as being within Section 1292(b). Whether the date of taking is held July 1, 1966 or November 15, 1966, will not "materially advance the ultimate termination of the litigation." It will affect litigation now pending in the State Courts, but the Government has demonstrated no instance where the instant case will be severely affected. In fact, it is apparent that the ultimate determination of fair compensation could easily be adjusted, if necessary, for a later changed date of taking; the difference in time is, at most, 4 months, 15 days. In this Court's judgment, the real controversy over date of taking is collateral to the basic issue of just compensation. The Government is much more concerned with the pending State action.

It should also be emphasized that the instant case is not the "exceptional case" defined as requisite in Milbert v. Bison Laboratories, 260 F.2d 431 (3 Cir.1958). Although the instant decision may result in extra expense to the Government and may be important to the final determination of the case, the case cannot be considered as more than ordinary. These are the effects often engendered by pretrial rulings, and they do not make the case exceptional. The additional circumstance of the pending State action will not be considered controlling or relevant. That action, in which the Government is not a party, must and will take its own course, and this Court's decision will not be res adjudicata. Whatever other effect the instant decision may have on the State action as precedent will not make it exceptional, because that, too, is often the effect of ordinary litigation.

Therefore, the Court, not finding the instant proceeding exceptional or material in terms of impact on the trial which it precedes, enters the following

### ORDER

And now, to wit, this 26th day of June, 1967, for the reasons stated above, it is ordered, adjudged and decreed that the date of taking by the Government is fixed at November 15, 1966. The request of the Government for an Order under 28 U.S.C. § 1292(b) permitting an interlocutory appeal is denied.