Henry HARABURDA, Plaintiff,

v.

UNITED STATES STEEL CORPORATION, a corporation, Defendant.

Civ. A. No. 3578.

United States District Court
W. D. Michigan, S. D.

Aug. 4, 1960.

Alexander, Cholette, Buchanan, Perkins & Conklin and Paul E. Cholette and William D. Buchanan, Grand Rapids, Mich., for plaintiff.

Uhl, Bryant, Wheeler & Upham and Gordon B. Wheeler, Grand Rapids, Mich., for defendant.

STARR, Chief Judge.

The plaintiff, a citizen of Michigan residing in Kent county, began this action in the circuit court of Kent county on November 26, 1958, against the defendant, a New Jersey corporation authorized to do business in Michigan, to recover damages resulting from personal injuries. On January 2, 1959, the defendant removed the action to this court on the basis of diversity of citizenship, 28 U.S.C. § 1441(a).

In his declaration filed in circuit court, plaintiff alleged that his employer, the American News Company, Inc., had leased an electric wire-tying machine

from the defendant through its Gerrard Steel Strapping division, to be used for the bailing of magazines and other news material, and had purchased bailing wire from the defendant to be used in the machine. Plaintiff alleged that at all times the title to the leased machine remained in the defendant. He alleged that on or about December 7, 1955, while using the wire-tying machine in the bailing of magazines, the wire on a bundle being bailed broke and flew up in his face, causing severe facial and eye injuries. He further alleged that the defendant was careless and negligent in the manufacture and inspection of its wire-tying machine and in the manufacture of bailing wire for use in the machine; that defendant warranted that the machine was reasonably fit for the use and purpose for which it was intended; and that defendant's carelessness, negligence, and breach of warranty were the direct and proximate cause of his injuries and resulting damages.

■ On January 6, 1959, the defendant filed motions to quash service of summons, to strike the declaration, and to dismiss the action. On February 27, 1960, this court filed opinion and entered an order denying each of the defendant's motions. 187 F.Supp. 79. On March 8th the defendant filed a motion in pursuance of 28 U.S.C. § 1292(b) to amend the order entered February 29th by including in the order a finding that it involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Section 1292(b) as amended relating to permissible appeals from interlocutory orders of United States district courts provides as follows:

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."

The question presented by defendant's motion to amend is whether the order entered February 29, 1960, denying its motions to quash service of process, to strike plaintiff's declaration, and dismiss the action comes within the meaning and the intent of Congress in the enactment of § 1292(b). It is clear that the determination of that question depends upon the interpretation of said section. In People of Puerto Rico v. The Shell Co. (P.R.), Limited, 302 U.S. 253, 258, 58 S. Ct. 167, 169, 82 L.Ed. 235, the court stated:

"Words generally have different shades of meaning, and are to be construed if reasonably possible to effectuate the intent of the lawmakers; and this meaning in particular instances is to be arrived at not only by a consideration of the words themselves, but by considering, as well, the context, the purposes of the law, and the circumstances under which the words were employed. Atlantic Cleaners & Dyers v. United States, 286 U.S. 427, 433, [52 S.Ct. 607, 608, 76 L.Ed. 1204]; Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 86, 87–88, [55 S.Ct. 50, 51, 79 L.Ed. 211]."

This statement in the Puerto Rico case was quoted with approval in Vermilya-Brown Co., Inc., v. Connell, 335 U.S. 377, 386, 69 S.Ct. 140, 93 L.Ed. 76. In Ebert v. Poston, 266 U.S. 548, 554, 45 S.Ct. 188, 190, 69 L.Ed. 435, the Supreme Court stated: "The judicial function to be exercised in construing a statute is limited

to ascertaining the intention of the Legislature therein expressed." In United States v. Public Utilities Commission of California, 345 U.S. 295, 315, 316, 73 S. Ct. 706, 717, 97 L.Ed. 1020, the court said:

"Where the language and purpose of the questioned statute is clear, courts, of course, follow the legislative direction in interpretation. Where the words are ambiguous, the judiciary may properly use the legislative history to reach a conclusion. And that method of determining congressional purpose is likewise applicable when the literal words would bring about an end completely at variance with the purpose of the statute. Texas & Pacific R. Co. v. Abilene [Cotton] Oil Co., 204 U.S. 426, [27 S.Ct. 350, 51 L.Ed. 553]; Feres v. United States, 340 U.S. 135, [71 S.Ct. 153, 95 L.Ed. 152]; International [Longshoremen's & Warehousemen's] Union v. Juneau Spruce Corp., 342 U.S. 237, 243, [72 S.Ct. 235, 239, 96 L.Ed. 275]; Johansen v. United States, 343 U.S. 427, 432, [72 S.Ct. 849, 853, 96 L.Ed. 1051]."

Many other authorities could be cited which hold that a statute should be construed, if reasonably possible, to effectuate the intention of the legislature at the time of its enactment. However, there are authorities that hold that a statute should be construed in accordance with the plain or literal meaning of the words of the statute. In Gemsco, Inc., v. Walling, Administrator of the Wage and Hour Division, U. S. Department of Labor, 324 U.S. 244, 260, 65 S.Ct. 605, 614, 89 L.Ed. 921, the court stated: "The plain words and meaning of a statute cannot be overcome by a legislative history which, through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction." In Ex parte Collett, 337 U.S. 55, 61, 69 S.Ct. 944, 947, 959, 93 L.Ed. 1207, the court said: "There is no need to refer to the legislative history where the statutory language is clear." In Flora v. United States, 357 U.S. 63, 65, 78 S.Ct. 1079, 1081, 2 L.Ed.2d 1165, the court said: "In matters of statutory construction the duty of this Court is to give effect to the intent of Congress, and in doing so our first reference is of course to the literal meaning of words employed."

■■ A court's interpretation of a statute based on the meaning of the words of the statute is but a judicial statement of what the terms mean to that particular court, rather than what the terms meant to the legislature which stated them. Therefore, in interpreting § 1292(b) relating to appeals from interlocutory orders, the court should evaluate the objective manifestations of legislative intent at the time that section was enacted. The report of the Committee on the Judiciary of the House of Representatives on the bill which became § 1292(b), House Report No. 1667, 85 Cong.2d Sess., pp. 1, 2, states in part:

"There should be some way, for example, in long-draw-out cases such as antitrust and conspiracy cases, to dispose of vital questions which are raised in the trial without having to wait for the taking of testimony and the conclusion of the trial before the questions can be finally determined on appeal. * * *

"It is felt that the instant bill, in permitting appeals in nonfinal orders, will not only save protracted and expensive litigation, but, with its built-in safeguards, prevent numerous and groundless appeals to our appellate courts. * * *

"There is made a part of this report a report to the Judicial Conference of the United States, which sponsors this legislation. Your committee adopts with approval the view contained therein that appeals under this legislation should only be used in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not to be used or granted in ordinary litigation wherein the issues

raised can otherwise be properly disposed of."

The report of the Committee on the Judiciary of the Senate on this bill, 1958 U.S.Code Cong. and Adm.News, pp. 5255, 5256, states in part:

"The bill results from a growing awareness of the need for expedition of cases pending before the district courts. Many cases which are filed in the Federal district courts require the district judge to entertain motions at an early stage in the proceedings which, if determined, against the plaintiff, result in a final order which would then be appealable to the circuit courts of appeals of the United States. However, such motions, if determined in the plaintiff's favor, are interlocutory since they do not end the litigation and are not therefore, under existing provisions of law, appealable. For example, in a recent case a motion to dismiss for want of jurisdiction was filed in the district court early in the proceedings. The district court denied the motion and the matter then proceeded to trial. The disposition of that case took almost 8 months. Upon final order the case was appealed and the court of appeals determined that the district court did not have jurisdiction and entered an order accordingly. Had this legislation been in effect at that time, the district judge could have stated in writing his opinion that the motion was controlling and the defendant could thereupon have made application to the court of appeals for a review of the order denying the motion. Had the court of appeals entertained such a motion and reached the conclusion which it ultimately did, it would have resulted in a saving of the time of the district court and considerable expense on the part of the litigants.

"There are many civil actions from which similar illustrations could be furnished. For example, in an antitrust action a plea may be entered that the claim is barred by the statute of limitations. If this motion is denied, under existing law the matter is not appealable and the case then goes forward to trial. Disposition of antitrust cases may take considerable time, yet upon appeal following final disposition of such cases, the court of appeals may well determine that the statute of limitations had run and for that reason the district court did not have jurisdiction."

Attached to the Senate report was the report of the Committee on Appeals from Interlocutory Orders of the District Courts, submitted to the Chief Justice of the United States and the members of the Judicial Conference in September, 1953, 1958 U.S.Code Cong. and Adm.News, pp. 5260, 5261, which stated in part:

"Your Committee is of the view that the appeal from interlocutory orders thus provided should and will be used only in exceptional cases where a decision of the appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases, where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided, as in the recent case of Austrian v. Williams (2 Cir., 198 F.2d 697). It is not thought that district judges would grant the certificate in ordinary litigation which could otherwise be promptly disposed of or that mere question as to the correctness of the ruling would prompt the granting of the certificate. The right of appeal given by the amendatory statute is limited both by the requirement of the certificate of the trial judge, who is familiar with the litigation and will not be disposed to countenance dilatory tactics, and by the resting of final discretion in the matter in the court of appeals, which will not permit its docket to be crowded with piecemeal or minor litigation."

In denying an application for leave to appeal from an interlocutory order of the district court, the Court of Appeals in Milbert v. Bison Laboratories, 3 Cir., 260 F.2d 431, 433, said:

"It is quite apparent from the legislative history of the Act of September 2, 1958, that Congress intended that section 1292(b) should be sparingly applied. It is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation. Both the district judge and the court of appeals are to exercise independent judgment in each case and are not to act routinely."

In Kroch v. Texas Company, D.C., 167 F.Supp. 947, 949, the court said:

"While there is as yet little authority on the extent to which this new statute (§ 1292[b]) should be used, it is plain that it should be used sparingly and 'only in exceptional cases where an intermediate appeal may avoid protracted or expensive litigation'. Milbert v. Bison Laboratories, Inc., 3 Cir., 1958, 260 F.2d 431, 433."

In Bobolakis v. Compania Panamena Martima San Gerassimo, S.A., D.C., 168 F.Supp. 236, 239, 240, the court said:

"However, I believe that the legislative history of Public Law 85–919 (28 U.S.C.A. § 1292 as amended) plainly indicates that the statute is to be invoked only in exceptional cases 'to avoid unnecessary delay and expense.' I am fortified in this view as a result of the reading given the statute by the Third Circuit Court of Appeals in the recent case of Milbert v. Bison Laboratories, Inc., 3 Cir., 260 F.2d 431. It is clear that this legislation was aimed at the 'big' and expensive case where an unusual amount of time and money may be expended in the pre-trial phases of the case or where the trial itself is likely to be long and costly. The Senate report mentions antitrust actions as an example of the type of case in which appeals might be allowed under the statute. There is nothing in the language of the statute or its legislative history to support the view that Congress intended to establish something akin to a 'certiorari' policy for the Courts of Appeals whereby 'important' cases would receive special appellate treatment. Thus, I believe that a party cannot avail himself of the statute unless he shows that the appeal would save him from the cost and delay of protracted and expensive litigation."

In Seven-Up Company v. O-So Grape Co., D.C., 179 F.Supp. 167, 169, 170, the court said:

"Whenever leave to appeal under Section 1292(b) is requested the court to which that request is addressed must make an independent evaluation of all the circumstances of the particular case to determine whether an immediate appeal ought to be allowed. It is not perceived how any hard and fast rules for application of the statute can be devised by decision. In the final analysis, the only binding precedent is the statute itself, and the recognition that that statute merely creates an exception to the general rule that only final decisions are appealable in the ordinary case. It would seem that the most which judicial precedent can ever do is to serve as a guide to the court in making that independent evaluation of the circumstances which must be made in every case. * * *

"One cannot read the statute without an impelling conviction that it was intended to apply to the exceptional case, not to run-of-the-mill litigation. Courts which have construed the statute are largely in agreement on that principle. E. g., In re Heddendorf, supra, 263 F.2d at page 889; United States v. Wood-

bury, supra, 263 F.2d at page 788; n. 11; Milbert v. Bison Laboratories, supra, 260 F.2d at page 435; Biggers v. Bankers Bond Co., D.C.W.D. Ky., 171 F.Supp. 94, 95; Bobolakis v. Compania Panamena Maritima San Gerassimo, D.C.S.D.N.Y., 168 F.Supp. 236; Kroch v. Texas Company, D.C., 167 F.Supp. 947. But the courts seem to part company in their determination of what is an exceptional case. There would seem to be one trend of decisions which would authorize liberal use of the statutes for an immediate appeal, especially in cases where a district court has decided a jurisdictional question in favor of its having jurisdiction. E. g., Cordero v. Panama Canal Co., D.C.S.D.N.Y., 170 F. Supp. 234; Pennsylvania Turnpike Comm. v. McGinnes, D.C.E.D.Pa., 169 F.Supp. 580, leave to appeal granted and cause reversed, 3 Cir., 268 F.2d 65.

"On the other hand, the more logical view is exemplified by Bobolakis v. Compania Panamena Maritima San Gerassimo, supra. * * *

"Likewise, in Milbert v. Bison Laboratories, supra, 260 F.2d at page 433, it is said that the statute 'is to be used only in exceptional cases where an immediate [intermediate] appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation.' To same effect, Gottesman v. General Motors Corp., 2 Cir., 268 F. 2d 194; In re Heddendorf, 1 Cir., 263 F.2d 887.

"It would seem that the courts have at times been bothered by an assumed necessity to further define the term 'exceptional,' and, as a result of reasoning by abstract example to achieve that purpose, have made some unfortunate suggestions which might have far-reaching consequences. The pitfalls of such exemplary reasoning are demonstrated by the suggestion in United States v. Woodbury, 9 Cir., 263 F.2d 784, 787, that an immediate appeal is appropriate whenever a trial court decides a jurisdictional question in favor of its having jurisdiction. That suggestion is an unwarranted one, in my opinion, and one which would, if allowed, do much to abrogate the 'final decision' condition for appeals in ordinary cases.

"To say that the statute may be properly applied only to the big case or the exceptional case may well leave much to be desired, but because of the nature of the statute precision of definition is difficult except as the statute is defined and applied to each case as it arises. When the statute is so applied, I believe that the interlocutory substantive order which should commend itself to a court for immediate appeal would be a rarity, and that the interlocutory procedural order which would so command (sic) itself would be almost as rare as the dodo. As one court has suggested, a loose application of the statute could 'only stimulate the parties to more and greater * * * sparring apart from the merits.' Gottesman v. General Motors Corp., 2 Cir., 268 F.2d 194, 196." (Note the appendix to the opinion in the foregoing case, which sets forth the facts and holdings in many of the reported cases relating to appeals from interlocutory orders under 28 U.S.C. § 1292 (b).)

In United States v. Canale, D.C., 176 F. Supp. 568, 570, the court said: "This is an ordinary negligence action and although it took ten days to try, the Court is of the opinion that this is not the exceptional case to which the Act (28 U.S.C. § 1292[b]) should be applied."

In Berger v. United States, D.C., 170 F.Supp. 795, 797, the defendant moved to dismiss the complaint for lack of jurisdiction and, in the event of denial of that motion, moved for an order pursuant to 28 U.S.C. § 1292(b) permitting an interlocutory appeal from the order denying

the motion to dismiss. In denying the motion the district court said:

"The view that Section 1292(b) is to be used only in the protracted and expensive case has been taken by the Third Circuit in Milbert v. Bison Laboratories, 260 F.2d 431, and in this District in Bobolakis v. Compania Panamena Maritima San Gerassimo, S.A., D.C., 168 F.Supp. 236.

"I rest my decision, however, on the fact that there is not enough likelihood of success upon the appeal to warrant the exercise of my discretion in expediting it."

In Securities and Exchange Commission v. Central Foundry Company, D.C., 167 F.Supp. 821, the district court denied appeal under 28 U.S.C. § 1292(b) on the ground that its interlocutory order did not involve a controlling question of law as to which there was substantial ground for difference of opinion.

In re Heddendorf, 1 Cir., 263 F.2d 887, and Gottesman v. General Motors Corporation, 2 Cir., 268 F.2d 194, the courts of appeals clearly indicated that application of § 1292(b) should be limited to exceptional cases to avoid protracted or expensive litigation. The only decision of a court of the sixth circuit interpreting § 1292(b) and directly applicable to the question presented by defendant's motion to amend in the present action, is the case of Biggers v. Bankers Bond Company, Inc., D.C., 171 F.Supp. 94, 95. In that case in denying the defendant the right to appeal under § 1292(b) from an interlocutory order, Judge Swinford said in part:

"It has long been an express policy that piecemeal appeals are improper and delay the ultimate decision in legal proceedings. Baltimore Contractors v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233. * * *

"However, since the section (1292 [b]) does not expressly modify the long recognized construction of Sec. 1291 and the accepted and sensible policy of allowing appeals only from final judgments, subject to well de-fined and enumerated statutory exceptions, the new provision should be used sparingly and only in exceptional cases where an immediate appeal may avoid protracted or expensive litigation. Milbert v. Bison Laboratories, 3 Cir., 260 F.2d 431; Kroch v. Texas Co., D.C., 167 F. Supp. 947; Bobolakis v. Compania Panamena Maritima San Gerassimo, D.C.S.D.N.Y., 168 F.Supp. 236. * * *

"Examples of the 'exceptional cases' referred to in Milbert v. Bison Laboratories, supra, are the long and involved anti-trust cases or cases of a similar nature. The case at bar is not an exceptional case in that sense nor one that can be distinguished from numerous other cases. Neither is it a case that will involve a long trial. Counsel advised the court at the time it was assigned for trial at a pre-trial conference that the trial of the case would not require more than two or three days or a week at the most. To permit the prosecution of an appeal in a case of this nature would, from a practical standpoint, set a precedent for appeals from interlocutory orders in nearly all cases.

"It is safe to say that Congress did not intend to so seriously modify the practical effect of Sec. 1291. Judge Maris in Milbert v. Bison Laboratories, supra, stated that the Senate report mentioned anti-trust actions as the type of cases intended as subject to such appeal and that there was nothing in the language of the statute to imply that Congress intended to establish a kind of 'certiorari' policy for the Courts of Appeal whereby so-called 'important cases' would receive special appellate treatment."

However, it may be noted that other courts have granted appeals from interlocutory orders. In granting leave to appeal pursuant to 28 U.S.C. § 1292(b) in Oskoian v. Canuel, 1 Cir., 264 F.2d 591, 594, the court said:

"If we should now allow this application for an appeal from the interlocutory order denying the motion to dismiss, and if, upon such review, we should conclude to direct the district judge to dismiss the complaint, we would thereby forestall what might well be a long and expensive trial. In Matter of Heddendorf, 1 Cir., 1959, 263 F.2d 887, we recognized that this new statutory amendment of 28 U.S.C. § 1292 should be used sparingly and 'only in exceptional cases where an intermediate appeal may avoid protracted or expensive litigation', as said in Milbert v. Bison Laboratories, Inc., 3 Cir., 1958, 260 F.2d 431, 433. We went on to point out: 'Such an exceptional case might be one where the district court has denied a motion to dismiss for want of jurisdiction which raised a novel question and is reluctant to embark upon an extended and costly trial until assured that its decision on the motion to dismiss is sustained.' That 'exceptional case' seems to be present here."

In Corabi v. Auto Racing, Inc., 3 Cir., 264 F.2d 784, and in Jamison v. Kammerer, 3 Cir., 264 F.2d 789, the appellate court allowed appeals pursuant to § 1292 (b) for determination of the question of diversity of citizenship. However, it should be noted that these two cases and other cases involving the same question all arose out of one accident when a wheel that became detached from a racing car went into the stands and injured many people. In the Jamison case the court said: "These appeals present the same issues as those decided today in Corabi v. Auto Racing Co., 3 Cir., 264 F.2d 784. We note that in thirty-three additional civil actions in the court below Mr. Jamison was named as administrator in order to create federal diversity jurisdiction."

The case of Carter v. American Bus Lines, D.C., 22 F.R.D. 323, was an action to recover damages for the alleged negligence of the defendant bus lines. In its opinion granting the third-party defendant's motion to amend its motion to dismiss the action, the court said, page 328:

"The Court is of the opinion that this order involves a controlling question of law [whether the motion may be amended] as to which there is substantial ground for difference of opinion, and an immediate appeal from the order may materially advance the ultimate termination of the litigation. This will permit third-party plaintiff, if he so desires, to address an appeal to the Court of Appeals within ten days of the entry of this order."

In Orzulak v. Federal Commerce and Navigation Company, D.C., 168 F.Supp. 15, 18, 19, the district court, in granting a motion for an interlocutory order transferring the action to another district, said:

"Since there are several cases using language which, if applicable to the facts of this case, would result in denial of the transfer and since the plaintiff would be barred by the statute of limitations if the transfer is denied, the trial judge finds that the order granting the transfer involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. The Report of the Committee on Judiciary of the House of Representatives on Public Law 85–919 (28 U.S.C.A. § 1292(b)) listed one category of cases in which interlocutory appeals under that law would be proper, as follows: '(d) Cases relating to the transfer of the action where it is claimed that the transfer is not authorized by law.' Cf. Milbert v. Bison Laboratories, Inc., 3 Cir., 260 F.2d 431. * * *

"For the foregoing reasons, an order will be entered transferring this action to the United States District Court for the Southern District of New York and the statement con-

templated by Public Law 85–919 will be included in the order."

In Pennsylvania Turnpike Commission v. McGinnes, D.C., 169 F.Supp. 580, involving alleged fraud, the district court denied a motion to dismiss and, without discussing § 1292(b) or its legislative history or the applicable authorities, merely said, page 583: "I think the case is a proper one for the application of the Interlocutory Appeals Act of September 2, 1958, 28 U.S.C.A. § 1292, and the order may include a statement in accordance with that Act."

The case of Cordero v. Panama Canal Company, D.C., 170 F.Supp. 234, involved the plaintiff's claim under the Federal Employees Compensation Act, 5 U. S.C.A. § 751 et seq. The district court denied a motion to dismiss and, without discussing § 1292(b) or its legislative history or the applicable authorities, said at pages 238, 239:

"By amendment to the Judicial Code, approved September 2, 1958, 28 U.S.C.A. § 1292(b) (1958), Congress provided for appeals from interlocutory orders involving 'controlling question[s] of law as to which there is substantial ground for difference of opinion' when the district judge is of the view that an 'immediate appeal from the order may materially advance the ultimate termination of the litigation * * *.' The issue presented upon this motion, heretofore untested, is one particularly amenable to the procedures detailed by the new act. Accordingly, this Court certifies the advisability of an immediate appeal."

The case of Sperry Rand Corporation v. Bell Telephone Laboratories, Incorporated, D.C., 173 F.Supp. 714, 715, involved the plaintiff's motion to amend its complaint in a patent case. In denying the motion the district court, without discussing § 1292(b) or its legislative history or the applicable authorities, merely said:

"The moving party also seeks a certificate under § 1292(b) of Title 28 United States Code, so that the determination of the Court may be reviewed by the Court of Appeals at the present stage of the litigation.

"The Court is of the opinion that this order affirming the previous opinion of this Court, and that opinion, involve a controlling question of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal from the order may materially advance the ultimate determination of this rather long litigation. If the Court is wrong in its determination, it may become necessary to try this case twice. If it is right, that determination should be promptly made so that there will be no question as to the issues to be tried. This statement shall constitute a certificate under § 1292(b) of Title 28 United States Code." It may be noted that the court of appeals subsequently denied the motion for leave to appeal from the district court's interlocutory order, Sperry Rand Corporation v. Bell Telephone Laboratories, Incorporated, 2 Cir., 272 F.2d 29.

See also article by Charles Alan Wright, professor of law, University of Texas, entitled "The Interlocutory Appeals Act of 1958," 23 F.R.D. 199 et seq.

The court's order of February 29, 1960, denying the defendant's motion to quash service of summons, to strike the declaration, and to dismiss the action, in effect determined that this court had jurisdiction of the defendant. It is clear that the order involved a controlling question of law as to jurisdiction as to which there is substantial ground for difference of opinion, and that an immediate appeal from the order might materially advance the ultimate termination of the litigation. That is, a reversal of that order regarding jurisdiction by the appellate court would terminate the action.

However, the present action is a rather ordinary, mine-run damage suit for personal injuries and could be tried and disposed of in a few days. From considera-

tion of the legislative history clearly indicating the intent and purpose of the Congress in the enactment of § 1292(b), and from consideration of the many authorities herein cited and discussed, the court concludes that the present action is not the exceptional case involving protracted and expensive litigation to which that section was intended to apply. Therefore, for the reasons herein stated the defendant's motion to amend the court's order of February 29, 1960, is denied. An order will be entered in accordance with this opinion.

No costs will be allowed in connection with the defendant's motion. The defendant is granted 20 days within which to file answer to the plaintiff's complaint.