329 F.2d 825
 The CITY OF BURBANK, a municipal Corporation of the State of
California, Appellant,
v.
GENERAL ELECTRIC COMPANY, a corporation, et al., Appellee.
DEPARTMENT OF WATER AND POWER OF the CITY OF LOS ANGELES, a
municipal Corporation of and in the State of
California, Appellant,
v.
ALLIS-CHALMERS MANUFACTURING COMPANY et al., Appellee.
IMPERIAL IRRIGATION DISTRICT, Appellant,
v.
FEDERAL PACIFIC ELECTRIC COMPANY et al., Appellee.
PACIFIC GAS & ELECTRIC COMPANY, a corporation, Appellant,
v.
GENERAL ELECTRIC COMPANY, a corporation, et al., Appellee.
PACIFIC GAS & ELECTRIC COMPANY, a corporation, Appellant,
v.
FEDERAL PACIFIC ELECTRIC COMPANY, a corporation, et al., Appellee.
 Nos. 18474-18478.
 United States Court of Appeals Ninth Circuit.
 March 20, 1964.
 
 Samuel Gorlick, City Atty., City of Burbank, Burbank, Cal., William C. Dixon and Alfred C. Ackerson, Los Angeles, Cal., for appellant City of Burbank.
 Roger Arnebergh, City Atty., Gilmore Tillman, Chief Asst. City Atty. for Water & Power, Robert E. Moore, Jr., Deputy City Atty., Gerald Luhman, Deputy City Atty., Los Angeles, Cal., and Ely, Duncan & Bennett, and Northcutt Ely, Washington, D.C., for the appellant Dept. of Water and Power of City of Los Angeles.
 Horton, Knox, Carter & Rutherford, James H. Carter, El Centro, Cal., Ely, Duncan & Bennett, Washington, D.C., for appellant Imperial Irr. Dist.
 Lawler, Felix & Hall, Marcus Mattson, R. F. Outcault, Jr., Los Angeles, Cal. and Richard H. Peterson, Frederick T. Searls, Philip A. Crane, Jr., San Francisco, Cal., for appellant Pacific Gas & Electric Co.
 Adams, Duque & Hazeltine, Lawrence T. Lydick, Los Angeles, Cal., for appellee I-T-E Circuit Breaker Co.
 Gibson, Dunn & Crutcher, and Richard H. Wolford, Los Angeles, Cal., for appellees A. B. Chance Co., Clark Comptroller Co., Joslyn Mfg. & Supply Co., Lapp Insulator Co., McGraw-Edison Co., Ohio Brass Co., Porcelain Insulator Corp., Southern States Equip., Square D Co., and C. H. Wheeler Mfg. Co.
 Lillick, Geary, McHose, Roethke & Myers, and William A. C. Roethke, Los Angeles, Cal., for appellee Kuhlman Elec. Co.
 Loeb & Loeb and John L. Cole, Los Angeles, Cal., for appellees Cornell-Dubilier Elec. Corp. & Federal Pacific Co.
 MacDonald & Halsted and Robert H. Edwards, Los Angeles, Cal., for appellee Hubbard & Co.
 McCutchen, Black, Harnagel & Shea, Harold A. Black, and G. Richard Doty, Los Angeles, Cal., for appellee Gen. Elec. Co.
 Musick, Peeler & Garrett, Bruce A. Bevan, Jr., and Ralph E. Erickson, Los Angeles, Cal., for appellees Cutler-Hammer Inc., and Allen Bradley Co.
 Newlin, Tackabury & Johnston, and Frank R. Johnston, Los Angeles, Cal., for appellee H. K. Porter Co.
 Parker, Milliken, Kohlmeier, Clark & O'Hara, Mark Townsend, and R. F. Wade, Los Angeles, California, for appellee Wagner Elec. Corp.
 Paul, Hastings, Janofsky & Walker, Lee G. Paul, Los Angeles, Cal., for appellees Ingersoll-Rand Co., Worthington Corp.
 Sheppard, Mullin, Richter & Hampton, and Gordon F. Hampton, Los Angeles, Cal., for appellees Moloney Elec. Co., and Schwager-Wood Co.
 Stephens, Jones, LaFever & Smith, Don P. Clark, and Maurice Jones, Jr., Los Angeles, Cal., for appellee Sangamo Elec. Co.
 Swerdlow, Glikbarg & Berkowitz, Harry B. Swerdlow, and Allan Albala, Beverly Hills, Cal., for appellee Westinghouse Elec. Co.
 Walker, Wright, Tyler & Ward, Irving M. Walker and Don F. Tyler, Los Angeles, Cal., for appellee Allis-Chalmers Mfg.
 Before BARNES, JERTBERG and KOELSCH, Circuit Judges.
 BARNES, Circuit Judge.
 
 
 1
 Before us are five appeals by four appellants in companion cases arising from private treble damage actions filed as an outgrowth of the government's antitrust prosecutions in the electrical equipment industry. These appeals are from the Southern District of California, Central Division. The electrical equipment convictions were obtained, of course, in 1961 in the District Court for the Eastern District of Pennsylvania.
 
 
 2
 The companion appeals are from an order, applicable to the several cases, sustaining a motion made by certain defendants[1] under Federal Rules of Civil Procedure 12(f) to strike all reference in some 124 companion cases to certain previous criminal proceedings had between certain defendants in each action and the United States of America, including a recital of the defendants' pleas entered in said criminal proceedings.[2]
 
 
 3
 The motion was granted in a memorandum of decision and a subsequent order.
 
 
 4
 The district court had jurisdiction of the cause pursuant to 15 U.S.C. 1 and 15. Since the district court in its order characterized the question before it in terms required by 28 U.S.C. 1292(b),[3] and since another panel of this court granted leave to appeal, this court has jurisdiction pursuant to 28 U.S.C. 1292(b).
 
 
 5
 The district court ordered to be stricken all 'references to the government criminal and civil proceedings, including dates of initiation and termination thereof;' pleas of guilty and nolo contendere entered therein; sentences imposed; and grand jury indictments returned.
 
 
 6
 In support of this decision the district court relied primarily on its conclusion that 5(a) of the Clayton Act (15 U.S.C. 16(a))[4] did not authorize the use in private treble damage suits of pleas of guilty and nolo contendere as prima facie evidence of violation of the antitrust laws. The district court also held in its memorandum that the stricken allegations were only evidentiary and thus had no place in the complaint, especially when they were 'certainly not necessary to a short and plain statement of the claim showing that the pleader is entitled to relief, which is all that Rule 8(a)(2) * * * requires.' (No. 18477, R.125.)
 
 
 7
 This court could approach these appeals with the preliminary question in mind: Did the district court abuse its discretion in striking the allegations? If it had, and we reversed on that ground, we could avoid the more fundamental question-- whether 5(a) excludes as consent decrees the use of pleas of guilty and nolo contendere in private treble damage suits. Yet, if we were to avoid an inquiry into the applicability of 5(a), we cannot see another 'controlling question of law' upon which to justify these interlocutory appeals under 28 U.S.C. 1292(b). Finding no other 'controlling question of law' upon which to justify these appeals, we would be required to dismiss these appeals as previously improvidently granted by this court.
 
 
 8
 We are not disposed to so dismiss. Rather, we believe that we have the responsibility to reach the question of the applicability of 5(a). The question presented to this court in the application for leave to appeal was clearly the proper interpretation of the proviso in 5(a). This was what was discussed by the trial court in its memorandum, and, in our opinion and in the opinion of all the parties, is the issue which was certified to this court as controlling.[5] It is the only issue relied upon by the appellants in three of the five appeals. Even the party in the other two appeals which argues that the allegations stricken were material, nonprejudicial, and of evidentiary value, touches these issues only obliquely[6] in its application to take these appeals (though not on the appeal itself). Finally, were we not to reach the issue concerning 5(a), the parties, attorneys, witnesses, and the district court might consume months in proceedings which could be wasted effort if it should later be determined that the district court was in error in its conclusion that plaintiffs in private treble damage suits cannot use pleas of guilty and nolo contendere as prima facie evidence of violation of the antitrust laws.
 
 
 9
 These same reasons, as well as others, convince us that we should not reach the pleading issues raised in Nos. 18477 and 18478.[7] Interlocutory appeals under 28 U.S.C. 1292(b) are allowed for the purpose of determining
 
 
 10
 '* * * controlling question(s) of law as to which there is substantial ground for difference of opinion * * * (where) an immediate appeal from the order may materially advance the ultimate termination of the litigation. * * *'
 
 
 11
 We do not believe that the pleading issues raised in Nos. 18477 and 18478 were so certified by the district court as controlling questions of law, nor do we believe that an immediate appeal from the order on these pleading issues may materially advance the ultimate termination of the litigation. We also agree with opinions expressing the view that this statutory provision allowing interlocutory appeals in certain enumerated instances should be used sparingly.[8] We thus will not rule on the ordinary pleading issues raised in Nos. 18477 and 18478 but only consider the controlling question concerning 5(a).
 
 
 12
 Does 5(a) of the Clayton Act (15 U.S.C. 16(a)) authorize the use by a private plaintiff in treble damage litigation of defendants' previous pleas of
 
 
 13
 (a) nolo contendere, or of
 
 
 14
 (b) guilty
 
 
 15
 as prima facie evidence of violation of the antitrust laws?
 
 
 16
 As we have seen, 5(a) of the Clayton Act, as amended, provides (15 U.S.C. 16(a)):
 
 
 17
 'A final judgment or decree * * * in any civil of criminal proceeding * * * shall be prima facie evidence against such defendant in any action or proceeding brought by any other party * * * as to all matters * * * which * * * would be an estoppel as between the parties * * *. Provided, That this section shall not apply to consent judgments or decrees entered before any testimony has been taken * * *.'[9]
 
 
 18
 The court below held that the proviso operates to exempt from the force of the body of section 5(a) judgments or decrees based both on pleas of nolo contendere and guilty; that criminal convictions, whether following a plea of guilty or nolo contendere, are 'consent judgments or decrees,' as that phrase is employed in section 5(a) of the Clayton Act.
 
 
 19
 In considering the language to be interpreted, we find a slight change was made in it between the 1914 enactment, and the 1955 revision. The two primary concerns of the 1955 amendment to the Clayton Act (38 Stat. 730) were to grant the United States the right to recover actual damages for injuries to its property by reason of violation of the antitrust laws (Clayton Act, 4A, 15 U.S.C. 15a) and to establish a uniform (four year) statute of limitations (Clayton Act 4B, 15 U.S.C. 15b).
 
 
 20
 According to the legislative history, 2 of the 1955 bill amends 5(a) 'to provide that final judgments or decrees rendered in civil or criminal proceedings (with the exception of Government damage suits under new section 4A) * * * shall be prima facie evidence against defendants * * *.'
 
 
 21
 Section 7 of the Sherman Act gave private persons the right to sue in the federal courts for damages arising from violations of the Sherman Act. Section 4 of the Clayton Act was more comprehensive; therefore 7 of the Sherman Act was 'considered to be no longer necessary.' In the legislative history the following then appears:
 
 
 22
 'At the time of enactment of the Sherman Act, the major emphasis was upon methods of enforcement, and it was believed that the most effective method, in addition to the imposition of penalties by the United States, was to provide for private treble damage suits. It was originally hoped that this would encourage private litigants to bear a considerable amount of the burden and expense of enforcement and thus save the Government time and money.
 
 
 23
 'The enactment of the Clayton Act in 1914 was in part a recognition by the Congress that section 7 of the Sherman Act had not successfully stimulated private litigation for enforcement of the Sherman Act. Section 5 of the Clayton Act provided that final judgments and decrees in Federal antitrust proceedings would be acceptable as prima facie evidence against defendants in private damage suits. Section 4 of the Clayton Act simply restated the private right of action for damages contained in section 7 of the Sherman Act, but extended this right to cover all antitrust violations.
 
 
 24
 'Since the enactment of the Clayton Act, the bulk of private antitrust litigation has followed successful Government action, so that the judgments and decrees in the Federal proceedings could be used to establish a case. Amassing (evidence) for antitrust cases would otherwise be a prohibitively expensive task for most plaintiffs.' (1955 U.S. Code & Adm. News 2328 at 2329).
 
 
 25
 Thus, undoubtedly one purpose underlying the amendment adopted by Congress was to make it easier for private antitrust plaintiffs to recover from defendants already sued and found guilty by the government of antitrust violations.
 
 
 26
 We conclude Congress intended no material change in purpose by reason of the minor changes in 5(a) of the Clayton Act occasioned by the passage of 2 of the 1955 amendments.
 
 
 27
 The original 1914 enactment made prima facie evidence a final judgment or decree 'in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the antitrust laws.' The 1955 enactment made prima facie evidence a final judgment or decree 'in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws.' Both were subject to the proviso that the 'section shall not apply to consent judgments or decrees entered before any testimony has been taken.'
 
 
 28
 This is, in each enactment, the first mention of 'consent judgments or decrees.' Did it refer only to consent decrees in civil proceedings, or did it include pleas in criminal cases?
 
 
 29
 We agree with appellants that 'the phrase 'consent judgments or decrees' does not describe convictions in criminal prosecutions when applied in its normal and customary manner.' The consent judgments and decrees negotiated by the Antitrust Division of the Department of Justice of the United States are all civil judgments. They are negotiated between the government and the civil defendants and when the two groups of lawyers have decided what the decision is to be, it is then submitted to the trial court for approval. This approval is not necessarily, but from a practical standpoint is, a foregone conclusion. The decree as submitted to the court for approval, has already been drawn. The court need not approve, but if it did not, or suggested or attempted a substantial change in the proposed consent judgment, each party to the consent decree, at the very least, would be free to withdraw from the stipulated 'consent,' and proceed to trial.[10] And see: United States v. Ward Baking Co., 376 U.S. 327, 84 S.Ct. 763, 11 L.Ed.2d 743, decided March 9, 1964.
 
 
 30
 The entry of a plea in a criminal proceeding, however, while it may be the subject of tacit agreement between the government and the criminal defendants (as to whether it should be a plea of guilty, or nolo contendere) is always subject to actual approval by the trial court.[11] At times the parties agree to a nolo contendere plea, but the court will not 'go along.' At times the defendant desires to plead nolo contendere, and the government insists on a guilty plea. The court then decides the issue, and enters that which it thinks proper. To this procedure one of the parties may not only fail to consent, it may violently oppose the court's ruling. Neither the government nor the criminal defendants by their mutual consent alone can bind the trial court to accept any chosen criminal plea.
 
 
 31
 'The distinction between a decree in common form and a consent decree is the difference between a consent to submit a case to the court for decision and a consent as to what the decision shall be. When there is a consent as to what the decision shall be, the decree is a 'mere agreement of the parties under the sanction of the court, and is to be interpreted as an agreement." Hodgson v. Vroom, 2 Cir. 1920, 266 F. 267, 268-269.
 
 
 32
 In the often quoted case of Twin Ports Oil Co. v. Pure Oil Co., D.Minn.1939, 26 F.Supp. 366, the able and experienced Judge Nordbye stated:
 
 
 33
 'It is the use of the word 'consent' with reference to criminal proceedings that has apparently caused some uncertainty and doubt as to the interpretation to be given to this section. It is urged that a consent judgment in a criminal case is an anomaly in legal parlance. Strictly speaking, it may be that there is no such thing as a consent judgment in criminal proceedings. One who enters a plea of guilty does not necessarily consent to the judgment that the court imposes.' (Id. 26 F.Supp. at 371.)
 
 
 34
 This 'anomaly in legal parlance' raised doubts in the mind of another judge familiar with antitrust law. In United States v. Standard Ultramarine & Color Co., S.D.N.Y.1955, 137 F.Supp. 167, 174, Judge Weinfeld of the Southern District of New York had before him the problem of whether defendants had the right to enter nolo contendere pleas against the wishes of the government.
 
 
 35
 There the defendants urged that 'consent decrees' included criminal pleas. Congress in passing 5, said those defendants, intended to encourage defendants to capitulate to the government charges without a trial, whether the proceedings were civil or criminal. Recognizing the anomaly, Judge Weinfeld stated:
 
 
 36
 'It is far from clear, despite judicial authority supporting the view (citing Twin Ports Oil Co. v. Pure Oil Co., supra), that the exception in 5 was intended to apply to criminal prosecutions as well as to equity suits.' (137 F.Supp. at 173.)
 
 
 37
 Judge Weinfeld relied principally on this statement on congressional debates (51 Cong.Rec. 15823-4; 16046-7). Without deciding the congressional intent, Judge Weinfeld finally relied upon Rule 11 of the Federal Rules of Criminal Procedure, which vests the court with discretion to accept or reject the tendered nolo contendere plea.
 
 
 38
 Because Congress made no reference to 'criminal proceedings' in the proviso to 5(a), although using that phrase in the body of the enactment, we are urged by appellants to follow the rule that where Congress has carefully employed a term in one place and excluded it in another, it should not be implied where excluded. Federal Trade Commission v. Simplicity Pattern Co., 1959, 360 U.S. 55, 79 S.Ct. 1005, 3 L.Ed.2d 1079, rehearing denied 361 U.S. 855, 80 S.Ct. 41, 4 L.Ed.2d 93; Federal Trade Commission v. Sun Oil Co., 1963, 371 U.S. 505, 515, 83 S.Ct. 358, 9 L.Ed.2d 466.
 
 
 39
 This is not factually the case, say appellees (who hurry past the modifying word 'consent' modifying 'judgments or decrees' in the proviso clause), because the Congress used the words 'judgment or decree' (or 'judgments and decrees') five times in the original section, and we should assume that the term '* * * in an absence of an indication to the contrary, was employed by the Congress throughout the Act in the same, and not different senses.' (Citing United States v. Cooper Corp., 1941, 312 U.S. 600, 607, 61 S.Ct. 742, 85 L.Ed. 1071.)
 
 
 40
 This same reasoning was followed by Judge Norbye in the Twin Ports case, supra.
 
 
 41
 Appellees also cite Barnsdall Ref. Corp. v. Birnamwood Oil Co., E.D.Wis.1940, 32 F.Supp. 308, 312, as following the Twin Ports' reasoning (as well as Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., N.D.Ill.1962, 211 F.Supp. 712, affirmed on this point and reversed on another 7 Cir. 1963, 323 F.2d 412, cert. denied 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (March 2, 1964)) for the proposition that the terms of the temporary proviso made the congressional intent as to the first proviso plain-- that it was clearly the intent of Congress that the permanent proviso was to apply to 'consent judgments in criminal cases as well as suits in equity.' (32 F.Supp. at 312.)
 
 
 42
 On the appeal of the Commonwealth Edison case, the court of appeals of the Seventh Circuit said:
 
 
 43
 'We see no merit in the plaintiffs' contention that the exclusionary proviso ('* * * this section shall not apply to consent judgments or decrees entered before any testimony has been taken * * *') in 5(a) does not extend to judgments in criminal cases. We think the plain words of the statute indicate Congress intended to include judgments in criminal cases in the proviso. The main section of 5(a) uses the words 'in any civil or criminal proceeding.' The exclusionary proviso does not expressly refer either to civil or criminal proceedings; it merely says 'judgments or decrees.' When the section was originally enacted, however, it contained a temporary proviso, since eliminated, stating: 'Provided, further, This section shall not apply to consent judgments * * * rendered in criminal proceedings * * * now pending * * *.'
 
 
 44
 'The exclusionary proviso with which we are concerned was located between the clear words in the main section and the temporary proviso. It is our opinion that Congress did not use the term 'judgment' in the exclusionary proviso in a sense different from that in the main section and in the temporary proviso. Had Congress intended in the exclusionary proviso to refer only to civil judgments, we think it would have clearly said so.
 
 
 45
 'We do not agree either that in criminal cases there can be no consent judgments. There is ample authority that judgments entered on pleas in criminal cases are within the proviso. Twin Ports Oil Co. v. Pure Oil Co., 26 F.Supp. 366 (D.Minn. 1939), aff'd, 119 F.2d 747 (8th Cir. 1941), cert. denied, 314 U.S. 644, 62 S.Ct. 84, 86 L.Ed. 516, Barnsdall Refining Corp. v. Birnamwood Oil Co., 32 F.Supp. 308, 311 (E.D.Wis.1940), Alden-Rochelle, Inc. v. ASCAP, 3 F.R.D. 157 (S.D.N.Y.1942), United States v. Standard Ultramarine & Color Co., 137 F.Supp. 167 (S.D.N.Y.1955), Atlantic City Electric Co. v. General Electric Co., 207 F.Supp. 620 (S.D.N.Y.1962).
 
 
 46
 'The decisions in those cases involved pleas of nolo contendere and therefore also support the District Court's ruling that judgments entered on pleas of nolo contendere are within the proviso and thus are unavailable for the prima facie benefit of 5(a). We agree with Judge Learned Hand's statement that such judgments are 'plainly * * * within the (exclusionary) proviso * * *.' Pfotzer v. Aqua Systems, Inc., 162 F.2d 779, 784 (2d Cir. 1947).
 
 
 47
 'There are clear elememts of consent in a plea of nolo contendere. The plea requires the consent of the District Court. Rule 11, Federal Rules of Criminal Procedure. And in practice pleas of nolo contendere are rarely accepted by courts without the approval of the Government after compromise negotiations with the Government. The record of the Philadelphia criminal proceedings in the case at bar bears that out. See also Twin Ports Oil Co. v. Pure Oil Co., 26 F.Supp. 366, 372 (D.Minn. 1939), and 152 A.L.R. 270-271.' (323 F.2d at 414-415.)
 
 
 48
 See, generally, in support of the proposition that the permanent proviso in 5(a) applies to 'consent decrees' in criminal proceedings, as well as in civil proceedings, the following: Pfotzer v. Aqua Systems, Inc., 2 Cir. 1947, 162 F.2d 779; Alden-Rochelle, Inc. v. ASCAP, S.D.N.Y.1942, 3 F.R.D. 157; N.W. Electric Power Co-op, Inc. v. General Electric Co., W.D.Mo.1961, 30 F.R.D. 557; Atlantic City Electric Co. v. General Electric Co., S.D.N.Y.1962, 207 F.Supp. 620; City of San Antonio v. General Electric Co., Civil No. 3063, W.D.Tex., December 7, 1962; Simco Sales Service of Pennsylvania, Inc. v. Air Reduction Co., E.D.Pa., 1963, 213 F.Supp. 505. And cf.: Note, 71 Yale Law Journal 684, 686-8 (with particular reference to congressional history-- to the dicta in both Judge Nordbye's and Judge Weinfeld's opinions, supra).
 
 
 49
 We agree with the reasoning of Judge Kiley of the seventh circuit, and hold that the 5(a) permanent proviso applies to consent decrees in both civil and criminal cases, and that nolo contendere pleas are consent decrees, and hence fall within the proviso exclusions.
 
 
 50
 We reach the more difficult question of whether judgments entered on guilty pleas by defendants in criminal antitrust actions are within the proviso, and are thus not available for the prima facie benefit of 5(a).
 
 
 51
 We hold that the exclusionary proviso cannot apply to judgments entered on guilty pleas, and that such a plea constitutes prima facie evidence of the violation of antitrust laws.
 
 
 52
 The split of authority on this issue is almost as marked as is the unaniminity of opinion with respect to the holding that nolo contendere pleas come within the proviso.
 
 
 53
 Opposing our conclusion is the opinion of the careful and experienced judge rendered in this case below, and among others, the following: Judge Nordbye's strong dictum in Twin Ports, Supra; Judge Robeson's discussion in Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., supra; Judge Knoch's dissent in that reversal, 323 F.2d 417; the dicta in Barnsdall Refining Corp. v. Birnamwood Oil Co., supra; the ruling without discussion, in N.W. Electric Power Co-op, Inc. v. General Electric Co., supra; City of San Antonio v. General Electric Co., supra, and now on appeal to the fifth circuit; Note, 71 Yale Law Journal 684, 686.
 
 
 54
 Supporting our position directly or indirectly, we find: Commonwealth Edison v. Allis-Chalmers Mfg. Co., supra; Atlantic City Electric Co. v. General Electric Co., supra; City of Philadelphia v. Westinghouse Electric Corp., E.D.Pa. 1961 Trade Cases P70,143; Federal Shoe Inc., etc. v. United Shoe Machinery Corp., D.Mass.1956, 19 F.R.D. 209; United States v. Brunswick-Balke Collender Co., E.D.Wis.1962, 203 F.Supp. 657; Sacramento Municipal Utility Dist. v. Westinghouse Electric Corp., N.D.Cal.1962, 1962 Trade Cases P70,552.
 
 
 55
 As to whether the congressional history supports our conclusion, or is opposed to it, is apparently undeterminable. On appeal, in Commonwealth Edison, supra, the majority saw 'no reason to refer to the congressional debates for the precise meaning of the proviso. Each party here has cited parts of that legislative history with seeming support.' (323 F.2d at 415.) The district court in that same case finds it 'arguable' either way (211 F.Supp. 712, 726, n. 26), but finally finds support for its ultimate conclusion (subsequently reversed) that guilty pleas were consent judgments. Judge Feinberg, in Atlantic City v. General Electric, supra, concluded that the legislative history was 'inconclusive,' and the majority in Commonwealth Edison v. Allis-Chalmers, supra, agreed. We concur in that estimate.
 
 
 56
 The real nub of the controversy is to be found in the delicate task of balancing the policy involved in antitrust enforcement. The Congress felt that the antitrust laws of the United States could not be enforced by the government alone. Adequate enforcement requires the use of private antitrust litigation. Very little, if any, such aid materialized after the passage of the Sherman Act. The Clayton Act, and particularly 5(a), was passed to encourage private litigation, and to add the threat of treble damage recoveries, as well as fines, as a deterrent to antitrust law violation. The creation of prima facie evidence, through government effort, upon which an injured private litigant could later lely, was for the same purpose.
 
 
 57
 Did Congress intend to grant such aid only to those plaintiffs who were required to sue only those defendants, who had refused to admit their guilt when previously sued by the government, but had been found guilty after trial? A defendant in any criminal case ordinarily pleads guilty but for two reasons: (1) he is guilty, and (2) he thinks, if he does not know, the government can prove his guilt. If this be true, then the more guilty of antitrust violation a defendant may be-- the stronger the proof against him-- the more likely a plea which does not force the government to its proof will result. On the other hand, a plea by a criminal defendant of not guilty is ordinarily occasioned by (a) a belief in his lack of guilt, or (cynically but realistically), (b) a belief that the government cannot prove defendant's guilt. Should those defendants who enter a plea of not guilty, for either reason mentioned, be more harshly treated by the law than the defendant who pleads guilty because he is?
 
 
 58
 Such a result seems unfair to defendants who honestly believe in their innocence, even though they may not ultimately be found guiltless.
 
 
 59
 It is true that the Congress had another purpose in mind in passing 5(a)-- to encourage antitrust law malefactors to 'confess'-- to 'capitulate'-- and thus cut down on the length of trials, eliminate the large number of 'big cases,' and save costs of prosecution. This purpose is important. But a contrast of the policy considerations underlying the two purposes convinces us that the first urged-- the protection of the good faith plea of innocence-- is of the greater importance to the proper enforcement of all law than a specialized inducement to alleged antitrust violators to capitulate.
 
 
 60
 While there is a good deal of language found in the cases to the effect that there is little, if any, difference between a guilty plea and a plea of nolo contendere, we point out there must be some valid difference between the two, for each has remained in the law for many years.
 
 
 61
 One of the first differences coming to mind is that a plea of guilty may be made by a defendant (if he knows what he is doing) as a right. A plea of nolo contendere may not. It was urged by defendants in 211 F.Supp. 712, supra, that 'both judgments are based on the only consent needed-- that of the defendants.' This is not correct. Rule 11 of the Federal Rules of Criminal Procedure requires the consent of the court before a nolo contendere plea may be entered.[12] (Cf. 211 F.Supp. 712, at 724, cited supra.)
 
 
 62
 Without reference to counsel here involved, we think it curious that antitrust lawyers who will and have spent hours in urging district court judges that their clients should be permitted to plead nolo contendere rather than guilty to antitrust government charges, because of the differing effect of the two pleas, should now urge there really is not and should not be any different consequences of the two pleas. United States v. Standard Ultramarine & Color Co., supra; United States v. The B. F. Goodrich Co., et al., D.Colo.1957, 1957 Trade Cases P68,713. We think it fair to state the general understanding among the antitrust bar has long been that a difference existed between the effect of the two pleas. We think it better law enforcement that there should be, and we hold there is.
 
 
 63
 Affirmed in part, and reversed in part.
 
 
 
 [1]
 Certain defendants made the original motions, other defendants joined in; some defendants did not join. As an example, General Electric Company did not join in the motion in at least one of the cases (No. 18477), but was named as an appellee because of the effect of the appeal
 
 
 [2]
 In No. 18474, all defendants had pleaded guilty in the original criminal actions in Pennsylvania
 In No. 18475, all defendants had pleaded guilty.
 In No. 18476, all but one defendant had pleaded guilty, and it had pleaded nolo contendere.
 In No. 18477, all defendants had pleaded nolo contendere.
 In No. 18478, some defendants had pleaded guilty and some had pleaded nolo contendere.
 
 
 [3]
 The court below in its order certified (Tr. p. 161) that the 'court is of the opinion that the foregoing order involves a controlling question of law as to which there is substantial ground for differences of opinion and that an immediate appeal from the order, pursuant to 28 U.S.C.A. Section 1292(b) may materially advance an ultimate termination of this litigation.'
 
 
 [4]
 Section 5(a) of the Clayton Act, as amended (15 U.S.C. 16(a)) provides:
 'A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 15a of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: Provided, That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 15a of this title.'
 
 
 [5]
 A different panel than that hearing the appeal granted the application, by order dated March 8, 1963
 
 
 [6]
 '(c) May a plaintiff properly rely, in his complaint, on prior Government proceedings where such reliance is germane to the statute of limitation.' (Application, p. 7.)
 
 
 [7]
 The first four errors claimed by the appellant in Nos. 18477 and 18478 are:
 
 
 [1]
 The showings made by defendants in support of their contention that the allegations attached are 'immaterial, impertinent and prejudicial' were insufficient to sustain the granting of the motion
 
 
 [2]
 The allegations are material and pertinent, and not subject to a 12(f) motion
 
 
 [3]
 The order appealed from is erroneous insofar as it is based upon a determination that the allegations are wholly evidentiary and therefore violative of Rule 8(a)(2)
 
 
 [4]
 The order constitutes a premature ruling on questions of evidence. If these grounds are sound we never reach the fifth and controlling alleged error
 
 
 [8]
 Florida v. United States, 8 Cir. 1960, 285 F.2d 596, 600; Milbert v. Bison Laboratories, 3 Cir. en banc, 1958, 260 F.2d 431, 433-434; Kroch v. Texas Company, S.D.N.Y.1958, 167 F.Supp. 947, 949; Haraburda v. U.S. Steel Corp., W.D.Mich.1960, 187 F.Supp. 86; Seven-Up Company v. O-So Grape Co., S.D.Ill.1959, 179 F.Supp. 167
 
 
 [9]
 Section 16(a) likewise excludes by this proviso suits under 15 U.S.C. 15a which are suits by the United States for injuries to its business or property. This exclusion is not here relevant
 
 
 [10]
 '(A) defendant has the right to confess judgment in answer to a Government civil antitrust suit without the consent of the Court.' United States v. Standard Ultramarine & Color Co., infra
 
 
 [11]
 Rule 11, Federal Rules of Criminal Procedure:
 'Pleas
 'A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appeal, the court shall enter a plea of not guilty.'
 
 
 [12]
 While the court may refuse a plea of guilty, the refusal presumably applies essentially to 'un-understanding' individuals charged with ordinary federal crimes, comparable to state crimes, not to the usual corporate antitrust defendant